359 F.3d 1136
 Dawn KOUGASIAN; William James Kougasian, by his guardian ad litem, Dawn Kougasian, Plaintiffs-Appellants,
v.
TMSL, INC., a corporation; Howard More; K & K Insurance Group, Inc., a corporation, Defendants-Appellees.
 No. 02-56781.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 5, 2003 — Pasadena, California.
 Filed February 26, 2004.
 
 John W. Powell, Irvine, California, for the appellants.
 Philip D. Weiss and Donald Ornelas, Jr., Agajanian, McFall, Weiss, Tetreault & Crist, Los Angeles, California; James G. Boedecker, Mill Valley, California, for the appellees.
 Appeal from the United States District Court for the Central District of California, Florence Marie Cooper, District Judge, Presiding. D.C. No. CV-02-05243-FMC.
 Before Harry PREGERSON, Robert E. COWEN,* and William A. FLETCHER, Circuit Judges.
 Opinion by Judge William A. Fletcher.
 OPINION
 WILLIAM A. FLETCHER, Circuit Judge.
 
 
 1
 This is the fourth in a series of suits arising out of a skiing accident in which appellant's husband, James Kougasian, was killed. The district court dismissed the suit for want of subject matter jurisdiction based on the Rooker-Feldman doctrine.
 
 
 2
 We conclude that Rooker-Feldman does not deprive the district court of subject matter jurisdiction. We therefore reverse and remand for further proceedings. On remand, the district court may determine, inter alia, whether the suit should be dismissed under California preclusion law pursuant to 28 U.S.C. § 1738.
 
 I. Background
 
 3
 On December 21, 1997, James Kougasian was skiing on a groomed ski run at Ski Sunrise, a ski area operated by defendant TMSL, Inc. ("TMSL"). Ski Sunrise is located on United States Forest Service land in Los Angeles County, California, and is operated by TMSL under a special use permit issued by the United States Department of Agriculture. Mr. Kougasian fell after going over a jump created by a road crossing the ski run. He hit his head on a rock on the run and suffered severe head injuries from which he died a day later.
 
 A. Earlier Suits
 
 4
 Before filing the present suit, appellant Dawn Kougasian ("Kougasian") filed three earlier suits, two in California state court and one in federal district court. We describe them in turn.
 
 1. The First State Court Suit: Kougasian I
 
 5
 Kougasian filed her first suit in March 1998 in the Superior Court of Los Angeles County, on her own behalf and as guardian ad litem for her son William. TMSL was the sole defendant. Kougasian alleged causes of action for wrongful death, intentional and negligent infliction of emotional distress, and spoliation of evidence.
 
 
 6
 Kougasian alleged that TMSL had constructed the ski run in such a manner that the jump caused by the crossing road was not visible to skiers, and that skiers often fell just after the jump. She alleged that TMSL acted negligently and recklessly either in placing the rock or in failing to remove it. She also alleged that TMSL attempted to cover up the nature of the accident by moving both the rock and her injured husband; by falsely reporting to the local sheriff's department that her husband had skied off the trail; and by attempting to hide the identity of witnesses and to dissuade witnesses from testifying truthfully.
 
 
 7
 The California Superior Court granted TMSL's motion for summary judgment on all counts on June 18, 1999. The Court of Appeal affirmed on December 20, 2000, and the Supreme Court denied review on March 21, 2001.
 
 2. The Second State Court Suit: Kougasian II
 
 8
 In December 1998, Kougasian filed a second suit in the Superior Court of Orange County, which was subsequently transferred to Los Angeles County. She brought this suit both on her own behalf and as a survival action as successor in interest of her deceased husband. The defendants were TMSL and its insurer K & K Insurance Group ("K & K"). In her second amended complaint, filed August 1, 2001, Kougasian pled causes of action for premises liability, and for intentional and negligent infliction of emotional distress. She alleged essentially the same facts as in Kougasian I, and added allegations of conspiracy between TMSL and K & K to obstruct justice and to deny constitutional rights. In the added allegations, she claimed, inter alia, that the defendants had filed a false declaration in Kougasian I, and that the court had based its judgment on this declaration. She alleged that the defendants prevented her from challenging the declaration by presenting it to the court at the last minute and by refusing to provide the declarant's telephone number or address.
 
 
 9
 The Superior Court in Kougasian II stayed proceedings while Kougasian I was pending on appeal. After the Court of Appeal affirmed the judgment in Kougasian I, the Superior Court sustained a demurrer by TMSL based on res judicata and collateral estoppel in an order filed on October 11, 2001. It also sustained a demurrer by K & K, but that document is not in the record. The Court of Appeal affirmed as to both defendants on April 28, 2003. The Court of Appeal held that Kougasian's emotional distress claims against TMSL in Kougasian II were barred by res judicata under California's "primary right" doctrine. It further held that Kougasian's survival claims against TMSL, and all claims against K & K, were barred by collateral estoppel.
 
 3. The Federal District Court Suit: Kougasian III
 
 10
 While Kougasian II was still pending in Superior Court, Kougasian filed a third suit, this time against the United States, in federal district court under the Federal Tort Claims Act. The parties stipulated to a voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(1) on February 21, 2002.
 
 B. The Present Suit
 
 11
 Kougasian filed the present diversity suit in federal district court in July 2002. Kougasian sues on her own behalf and as guardian ad litem for her son. Before filing this suit, Kougasian and her son had left California and had become citizens of Virginia, thereby establishing diversity. The defendants are TSML, Howard More (the sole shareholder of TSML), and K & K.
 
 
 12
 Kougasian alleges seven causes of action. In one of the causes of action, she seeks to set aside the state court judgments in Kougasian I and II, alleging that the defendants obtained those judgments through extrinsic fraud on the court. The allegations supporting her cause of action for extrinsic fraud also support two other causes of action in which she seeks damages for fraud and abuse of process. Kougasian particularly emphasizes the allegedly false declaration submitted in Kougasian I, upon which she partially relied in her complaint in Kougasian II. Kougasian alleged none of these three causes of action in her complaints in Kougasian I and II. In her remaining four causes of action, Kougasian seeks damages based on wrongful death, premises liability, and intentional and negligent infliction of emotional distress. Kougasian alleged these same four causes of action in Kougasian I and/or II.
 
 
 13
 Kougasian does not seek to set aside the judgments of the California courts in Kougasian I and II based on alleged legal errors by those courts. Rather, she seeks to set aside these judgments based on the alleged extrinsic fraud by defendants that produced those judgments. Nor does Kougasian seek damages based on any alleged legal error by the state courts. Rather, she seeks damages based on the alleged wrongful behavior of the defendants.
 
 
 14
 The district court dismissed Kougasian's complaint for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) pursuant to the Rooker-Feldman doctrine. The court noted that the plaintiffs made "almost identical allegations of fraud and abuse of process as those found in the [second amended complaint] in Kougasian II." The district court therefore concluded that Kougasian was in effect attempting to appeal the judgment of the state court, which is forbidden by Rooker-Feldman. We review de novo a district court's dismissal under Rooker-Feldman. Noel v. Hall, 341 F.3d 1148, 1154 (9th Cir.2003).
 
 II. The Rooker-Feldman Doctrine
 
 15
 The Rooker-Feldman doctrine has evolved from the two Supreme Court cases from which its name is derived. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Rooker-Feldman prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment. Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir.2003). In part, this prohibition arises through a negative inference from 28 U.S.C. § 1257, which grants jurisdiction to review a state court judgment in the United States Supreme Court. In re Gruntz, 202 F.3d 1074, 1078 (9th Cir.2000) (en banc). That is, while § 1257 explicitly authorizes the United States Supreme Court to hear an appeal from a state court judgment, it impliedly prohibits the lower federal courts from doing so. If a plaintiff brings a de facto appeal from a state court judgment, Rooker-Feldman requires that the district court dismiss the suit for lack of subject matter jurisdiction. Id. Determining what constitutes a forbidden de facto appeal, however, has sometimes proven difficult for the lower courts. See Noel, 341 F.3d at 1161-62 (collecting cases).
 
 
 16
 In Noel v. Hall, decided after the district court's decision in this case, we attempted to give guidance to the district courts in the application of Rooker-Feldman. We provided the following general formulation of the doctrine:
 
 
 17
 If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction. If there is simultaneously pending federal and state court litigation between the two parties dealing with the same or related issues, the federal district court in some circumstances may abstain or stay proceedings; or if there has been state court litigation that has already gone to judgment, the federal suit may be claim-[or issue-]precluded under [28 U.S.C.] § 1738. But in neither of these circumstances does Rooker-Feldman bar jurisdiction.
 
 
 18
 Id. at 1164. Rooker-Feldman thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment.
 
 III. Application of Rooker-Feldman
 
 19
 Applying our general formulation from Noel v. Hall, we conclude that the Rooker-Feldman doctrine does not apply to this case. While Kougasian seeks relief from the judgments of the state courts in Kougasian I and II, she does not allege that she has been harmed by legal errors made by the state courts. Rather, she alleges that the defendants' wrongful conduct has caused her harm. In the words of Noel v. Hall, she does not assert "as a legal wrong an allegedly erroneous decision by a state court," but rather "an allegedly illegal act or omission by an adverse party." Id.
 
 A. Alleged Extrinsic Fraud
 
 20
 Three of Kougasian's causes of action are based, in whole or in part, on alleged extrinsic fraud on the state court.[1] The alleged extrinsic fraud primarily consisted of submitting the false declaration to the state court in Kougasian I at the last minute and refusing to supply the telephone number or address of the declarant, thereby preventing Kougasian from deposing or otherwise questioning him. "Extrinsic fraud is conduct which prevents a party from presenting his claim in court." Wood v. McEwen, 644 F.2d 797, 801 (9th Cir.1981). Under California law, extrinsic fraud is a basis for setting aside an earlier judgment. See Zamora v. Clayborn Contracting Group, Inc., 28 Cal.4th 249, 121 Cal.Rptr.2d 187, 47 P.3d 1056, 1063 (2002).
 
 
 21
 At first glance, a federal suit alleging a cause of action for extrinsic fraud on a state court might appear to come within the Rooker-Feldman doctrine. It is clear that in such a case the plaintiff is seeking to set aside a state court judgment. But for Rooker-Feldman to apply, a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief. See Noel, 341 F.3d at 1164("If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal court.") (emphasis added). A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party. See id. ("If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.").
 
 
 22
 It has long been the law that a plaintiff in federal court can seek to set aside a state court judgment obtained through extrinsic fraud. In Barrow v. Hunton, 99 U.S. (9 Otto) 80, 25 L.Ed. 407 (1878), the Supreme Court distinguished between errors by the state court, which could not be reviewed in federal circuit court, and fraud on the state court, which could be the basis for an independent suit in circuit court. (The federal circuit court was a trial court at that time.) Anticipating the Rooker-Feldman doctrine, the Court wrote:
 
 
 23
 The question presented with regard to the jurisdiction of the Circuit Court is, whether the proceeding ... is or is not in its nature a separate suit, or whether it is a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuation of it. If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case. Otherwise, the Circuit Courts of the United States would become invested with power to control the proceedings in the State courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different States. Such a result would be totally inadmissible.
 
 
 24
 On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and according to the doctrine laid down in Gaines v. Fuentes (92 U.S. [(2 Otto)] 10, 23 L.Ed. 524), the case might be within the cognizance of the Federal courts. The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the State courts; and in the other class, the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or the party's right to claim any benefit by reason thereof.
 
 
 25
 Id. at 82-83 (emphasis added); see also MacKay v. Pfeil, 827 F.2d 540, 543-44 (9th Cir.1987) (quoting the above passage).
 
 
 26
 Extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud. Rooker-Feldman therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud.
 
 B. Other Alleged Wrongful Acts
 
 27
 Kougasian's remaining four causes of action are based on other alleged wrongful acts by the defendants. All of these causes of action were previously adjudicated by the state courts in Kougasian I and/or II. Because Kougasian is attempting to have the judgments of these two courts set aside based on the alleged extrinsic fraud by defendants, however, these four causes of action are not barred by Rooker-Feldman.
 
 
 28
 However, even if Kougasian were not seeking to set aside the judgments because of extrinsic fraud (or even if the federal court concludes that there was no extrinsic fraud), Rooker-Feldman still does not bar these four causes of action. Kougasian does not, in these causes of action, allege legal errors by the state courts; rather, she alleges wrongful acts by the defendants, such as negligently designing the ski run and negligently placing or failing to remove the rock. It is true that factual allegations and legal claims in these four causes of action are almost identical to the allegations and claims asserted in state court in Kougasian I and II, but that is not sufficient reason to find the causes of action barred by Rooker-Feldman.
 
 
 29
 If issues presented in a federal suit are "inextricably intertwined" with issues presented in a forbidden de facto appeal from a state court decision, Rooker-Feldman dictates that those intertwined issues may not be litigated. See Feldman, 460 U.S. at 483 n. 16, 103 S.Ct. 1303. But the issues in Kougasian's four causes of action are not "inextricably intertwined" within the meaning of Rooker-Feldman. In an ordinary language sense, the issues in Kougasian's claims are indeed "inextricably intertwined" with the issues in Kougasian I and II. But, as we explained in Noel v. Hall, "inextricably intertwined" has a narrow and specialized meaning in the Rooker-Feldman doctrine. See Noel, 341 F.3d at 1166.
 
 
 30
 If a federal plaintiff has brought a de facto appeal from a state court decision — alleging legal error by the state court and seeking relief from the state court's judgment — he or she is barred by Rooker-Feldman. The federal plaintiff is also barred from litigating, in a suit that contains a forbidden de facto appeal, any issues that are "inextricably intertwined" with issues in that de facto appeal. Id. at 1158. The inextricably intertwined test thus allows courts to dismiss claims closely related to claims that are themselves barred under Rooker-Feldman.
 
 
 31
 Some of our sister circuits have read the "inextricably intertwined" language of Rooker-Feldman more broadly. See, e.g., Moccio v. New York State Office of Court Admin., 95 F.3d 195, 199-200 (2d Cir.1996) ("We agree that the Supreme Court's use of `inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the Rooker-Feldman doctrine if it would be barred under the principles of preclusion."); Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 703 (1st Cir.1995) (dismissing due process challenge to revocation of a medical license as inextricably intertwined with a state court judgment affirming revocation of the license on the merits); see also Bechtold v. City of Rosemount, 104 F.3d 1062, 1065-66 (8th Cir.1997). Such a broad meaning of the phrase "inextricably intertwined," however, is not warranted by the Supreme Court's decision in Feldman, where the phrase originated. Nor is it warranted by the function of the Rooker-Feldman doctrine in our federal system.
 
 
 32
 As applied in Feldman, the "inextricably intertwined" test was used to prevent Feldman, the federal plaintiff, from raising, in the non-appeal part of his suit, issues that he was prevented from litigating in his forbidden de facto appeal. In that setting, the "inextricably intertwined" test made good sense, for it prevented Feldman from making an end-run around the rule against de facto appeals. But the "inextricably intertwined" test does not mean that a federal plaintiff can never raise issues that are "inextricably intertwined" with issues already decided in completed state court litigation. If that were so, Rooker-Feldman would in some cases give greater preclusive effect to state court judgments than the states themselves would give those judgments. Such super-preclusive effect would violate the requirement of 28 U.S.C. § 1738 that federal courts give the same (not more and not less) preclusive effect the rendering state courts would give to those judgments. See, e.g., Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); Noel, 341 F.3d at 1160. Similarly, if the "inextricably intertwined" test means that a federal plaintiff cannot raise issues that are "inextricably intertwined" with issues raised in simultaneous ongoing state court litigation, Rooker-Feldman would prevent the parallel state and federal litigation that is one of the hallmarks of our federal system. See, e.g., Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 295, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Green v. City of Tucson, 255 F.3d 1086, 1097-98 (9th Cir.2001) (en banc); Noel, 341 F.3d at 1159.
 
 
 33
 In this case, Kougasian has asserted no legal error by the state court. She is therefore not bringing a de facto appeal under Rooker-Feldman. Because she is not bringing a forbidden de facto appeal, there are no issues with which the issues in her federal claims are "inextricably intertwined" within the meaning of Rooker-Feldman. Therefore, even though Kougasian's remaining four causes of action are essentially identical to the causes of action already adjudicated in Kougasian I and/or II, Rooker-Feldman does not bar Kougasian's federal suit on those causes of action.
 
 IV. Preclusion
 
 34
 Although Kougasian is not barred by Rooker-Feldman, she may be precluded under California law. A federal court is required under 28 U.S.C. § 1738 to look to the preclusion law of the state court that rendered the earlier judgment or judgments to determine whether subsequent federal litigation is precluded. Because the district court dismissed Kougasian's suit under Rooker-Feldman, it did not perform an analysis under § 1738 and California preclusion law.
 
 
 35
 An issue or claim is not precluded in federal court merely because it already has been, or could have been, decided by a California state court. Issue and claim preclusion (collateral estoppel and res judicata) have specific requirements that must be satisfied before preclusion can be found. For example, under California state law a litigant must have had an appropriate opportunity to litigate an issue in the earlier suit before he or she will be issue-precluded (collaterally estopped) from relitigating that issue in a later suit. See, e.g., Johnson v. City of Loma Linda, 24 Cal.4th 61, 99 Cal.Rptr.2d 316, 5 P.3d 874, 884 (2000); see also McCutchen v. City of Montclair, 73 Cal.App.4th 1138, 87 Cal.Rptr.2d 95, 99 (1999) (litigants must have a "full and fair opportunity" to present their case for res judicata to apply) (quoting 7 Witkin, California Procedure, Judgment § 339 (4th ed.1997)); Lucido v. Superior Court, 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225 (1990) (setting forth the requirements for issue preclusion). Further, a litigant will be claim-precluded (barred by res judicata) from bringing a previously unbrought claim only if that claim is part of the same "primary right" as a claim decided in earlier litigation. See, e.g., Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 123 Cal.Rptr.2d 432, 51 P.3d 297, 306 (2002); Crowley v. Katleman, 8 Cal.4th 666, 34 Cal.Rptr.2d 386, 881 P.2d 1083, 1090 (1994).
 
 
 36
 We do not give these examples of California preclusion law because we decide that Kougasian did not have an appropriate opportunity, within the meaning of California law, to litigate the issues she now seeks to litigate in federal court. Nor do we decide that Kougasian's causes of action in this case were not part of the same primary rights as those adjudicated in Kougasian I and II. We intimate no view on those questions. Rather, we give these examples to illustrate the point that California preclusion law — like the preclusion law of all states — contains safeguards that protect against over-preclusion based on earlier litigation. The district court will be in a position on remand to determine the preclusive effect of Kougasian I and II, and we leave it to that court to make that determination in the first instance.
 
 V. Conclusion
 
 37
 We REVERSE the district court's dismissal of Kougasian's suit based on Rooker-Feldman, and we REMAND to that court for further proceedings consistent with this opinion. On remand, the district court will have an opportunity, inter alia, to determine the preclusive effect under California law of the state courts' decisions in Kougasian I and II.
 
 
 38
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 One of Kougasian's causes of action is based solely on extrinsic fraud. To the extent that Kougasian's two causes of action for fraud and for abuse of process are not based on extrinsic fraud, the analysis of this section is inapplicable. They are nevertheless not barred byRooker-Feldman, but for reasons given in the analysis in the next section of this opinion.