[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 22, 2006
THOMAS K. KAHN
CLERK

No. 05-15518
Non-Argument Calendar
_____

D. C. Docket No. 05-01115-CV-T-26-EAJ

RONNIE MICKENS,
GLORIA J MICKENS,

Plaintiffs-Appellants,

versus

TENTH JUDICIAL CIRCUIT,
DISTRICT COURT OF APPEALS, SECOND DISTRICT,

Defendants,

STEWART TITLE GUARANTY COMPANY,
ALLEN DAMRON CONSTRUCTION COMPANY,
ELAINE P. CANADY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(May 22, 2006)**

Before DUBINA, HULL and FAY, Circuit Judges.

PER CURIAM:

Ronnie and Gloria J. Mickens appeal pro se the district court's denial of their motion for a preliminary injunction and dismissal with prejudice of their pro se second amended civil complaint, in which they asserted various statutory and constitutional claims against Stewart Title Guaranty Company ("Stewart Title Guaranty"), Stewart Title of Polk County, Fla. ("Stewart Title"), Allen Damron Construction Company ("Damron Construction"), Allen Damron, Debra Damron, Elaine Canady, and Edith R. Lewis.[1] The Mickens also named as "third party defendants" in this second amended complaint the Polk County State Attorney, the Polk County Sheriff, and the Polk County Property Appraiser ("the Polk County Defendants"). The Mickens argue on appeal that the district court erred in concluding that dismissal was warranted as to their claims against the non-governmental defendants because the court lacked subject jurisdiction under the Rooker-Feldman doctrine.[2] The Mickens also contend that the court abused its

---

[1] To the extent the Mickens also filed an "Emergency Motion for Reconsideration Dismissal of Second Amended Complaint," and the district court denied this motion, the Mickens have not addressed this denial in their brief on appeal. Thus, we conclude that the Mickens have abandoned any challenges to it. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) (explaining that "a legal claim or argument that has not been briefed before the [C]ourt is deemed abandoned and its merits will not be addressed").

[2] The Rooker-Feldman doctrine is derived from Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.2d 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The Rooker-Feldman doctrine "provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." See Goodman ex rel. Goodman v. Sipos, 259 F.3d

2

discretion in dismissing their claims against the Polk County Defendants, instead of granting the Mickens's motion to amend their second amended complaint. For the reasons set forth more fully below, we affirm.

On June 15, 2005, the Mickens filed pro se a 41-page civil complaint against the Tenth Judicial Circuit in and for Polk County, the Second District Court of Appeals, Stewart Title Guaranty, and Damron Construction, asserting multiple federal statutory and constitutional claims and state-law claims. After determining that this complaint was a "quintessential shotgun pleading," the district court sua sponte struck it and directed the Mickens to replead their claims in compliance with the pleading requirements in Fed.R.Civ.P. 8(a)[3] and 10(b).[4]

On June 28, 2005, the Mickens filed an amended complaint, adding new defendants Stewart Title, Canady, Rewis, and the Damrons, in their individual capacities. The Mickens also added new state-law claims for slander of title, cancellation of deed, action to quiet title, ejectment, and breach of contract. Moreover, the Mickens filed an "Emergency Motion for Injunction to Enjoin

1327, 1332 (11th Cir. 2001) (internal quotations omitted).

[3] Rule 8(a) provides that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed.R.Civ.P. 8(a)(2).

[4] Rule 10(b) provides that "[a]ll averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances. . . .." See Fed.R.Civ.P. 10(b)

Foreclosure Sale," seeking an order enjoining the Tenth Judicial Circuit from conducting a mortgage foreclosure sale of their real property. The district court in an endorsed order denied this injunctive motion.

Stewart Title Guaranty subsequently filed a motion to dismiss the Mickens's amended complaint, asserting that the district court lacked jurisdiction based on the Rooker-Feldman doctrine. Stewart Title Guaranty argued that the Mickens's claims had been the subject of three separate state lawsuits in Florida and ten appeals in Florida's appellate courts. The district court denied Stewart Title Guaranty's motion to dismiss without prejudice. Nevertheless, the court noted that the Mickens's amended complaint was still an impermissible "shotgun complaint" and ordered them to again replead their claims in compliance with Rules 8(a) and 10(b). The court also instructed that "this is the last opportunity [the Mickens] will be afforded to amend their complaint." Additionally, the court granted the Mickens an extension of time to file a second amended complaint, based on the Mickens's assertion that they were consulting an attorney to assist them in repleading their complaint.

On August 11, 2005, the Mickens filed the instant second amended complaint, reasserting their previous claims and, for the first time, naming the Polk County Defendants as "third party defendants." The Polk County Defendants

4

specifically were named in the Mickens's claim alleging conspiracy to violate civil rights, filed pursuant to 42 U.S.C. § 1985(c) ("Count 1"); their claim alleging violations of their substantive and procedural due process rights and their equal protection rights, filed pursuant to 42 U.S.C. §§ 1983 & 1985 and 18 U.S.C. §§ 241 & 242 ("Counts III, IV & V"); and their discrimination claim based on race, filed pursuant to 42 U.S.C. § 2000e et seq. ("Count VIII").[5]

Stewart Title Guaranty filed a motion to dismiss with prejudice this second amended complaint, again arguing that the court lacked jurisdiction under the Rooker-Feldman doctrine.[6] In support, Stewart Title Guaranty attached a copy of a

_____

[5] The Mickens generally alleged in support of these claims that the Polk County Defendants acted "under color of law . . . to cover and conceal all defendants' acts of fraud, civil theft, forgery, conspiracy, false pretenses . . .[,]" and conspired "to cover and conceal [d]efendants' crimes and torts to deprive [the Mickens] of their property and their civil rights based on race." The Mickens similarly asserted these allegations in support of the individual counts, including alleging that the Polk County Defendants: (1) conspired with the other defendants "to stigmatize [the Mickens] and to violate [the Mickens's] rights to free speech, redress, due process, equal protection of the law and the right to own real property" and "attempt[ed] to extricate [d]efendants from their fraud and from their liability"; (2) "failed to protect, consider, follow, enforce or apply the laws . . . to prevent [d]efendants [sic] crimes and torts to [the Mickens's] detriment"; (3) "intentionally failed to protect [the Mickens's] civil right[s] and failed to consider, investigate, charge and prosecute [d]efendants for fraud, forgery, theft, conspiracy, [and] false pretenses"; (4) violated the Mickens's right to equal protection "by violating their rights to due process, redress, free speech, life, liberty and property"; and (5) "conspired with Stewart Title and the Damrons to systematically deprive [the Mickens] of Due Process, Equal Protection of the Laws, and Redress for conspiracy, forgery, [and] false pretenses . . . based on race."

[6] Damon Construction, the Damrons, Stewart Title, Canady, and Rewis filed similar motions to dismiss, adopting and incorporating by reference Stewart Title Guaranty's motion to dismiss.

state trial-court decision, in consolidated Case Nos. 1998CA-002977 (Stewart Title Guaranty's foreclosure suit), 1997CA-00045 (the Mickens's suit against Damon Construction), and 1998CA-001152 (the Mickens's suit against Stewart Title, Canady, and Rewis),[7] which included the following facts. In February 1996, the Mickens purchased a sub-division lot for $25,000, with the intent of hiring Damron Construction to build a home for them on the property. The Mickens next secured a loan through the Veterans Administration ("VA"), with a commitment through Nationsbank, to finance both the construction of the home and the purchase of the lot, which already had been paid in full. The Mickens also sought cash in equity to buy furniture for their intended home. However, after the VA informed the Mickens that it would not guarantee a construction loan, a loan officer from Nationsbank advised the Mickens that (1) Damon Construction would have to secure a construction loan while the house was being built, (2) the Mickens would have to deed the lot to Damron Construction as security on the construction loan, and (3) after the house was constructed, Damron Construction would transfer the house and lot back to the Mickens, who would then use the VA loan through Nationsbank to pay Damron Construction.

---

[7] The district court noted in its decision dismissing the instant action that these state court cases had been consolidated in this case. None of the parties has contested this finding on appeal.

In accordance with this loan officer's advice, the Mickens and Damron Construction executed a construction contract specifying that the lot would be subordinated temporarily to Damron Construction, then released back to the Mickens at final closing. Damon Construction, in turn, secured a $156,000 loan through Chase Federal Bank to construct the house. Stewart Title—the closing agent for the construction loan—procured the title insurance, underwritten by Stewart Title Guaranty, and prepared the quitclaim deed that was used to transfer title for the lot from the Mickens to Damron Construction. On closing day for this construction loan, Damon Construction picked up the partially completed quitclaim deed from Stewart Title and, on the Mickens's request, brought it to the Mickens's home for the Mickens to sign outside the presence of witnesses or a notary. Damron then took the signed deed, along with photocopies of the Mickens's driver's licenses, to the closing. Rewis and Canady, both employees of Stewart Title, witnessed the closing and served as a notary, respectively, relying solely on the photocopies of the Mickens's licenses.

After the relationship between the Mickens and Damon Construction deteriorated, due to disputes over the quality and cost of the construction project, the Mickens consulted an attorney, who advised them that the quitclaim deed to

Damron Construction had been recorded.  To protect their rights to this lot, the Mickens signed and recorded an "Affidavit of Equitable Owners," which stated:

> The intent of the parties to the [construction] contract was that affiants would convey the above described property to contractor who would obtain construction financing, build a home on the property and reconvey the property to affiants.

Damron Construction subsequently sued the Mickens in the Florida Tenth Judicial Circuit, in Case. No. 1997CA-000455, seeking specific performance of the construction contract and the ejectment of the Mickens from their house.  In January 1998, at the conclusion of a bench trial, the state trial court found that the deed from the Mickens to Damron Construction was void ab initio and entered a judgment in favor of the Mickens.  This judgment, however, was reversed on appeal by the Second District Court of Appeals, in Allen Damron Constr. Co. v. Mickens, 725 So.2d 1174 (Fla. Dist. Ct. App. 1998).

On remand, the state trial court ordered the parties to obtain experts to determine the value of the labor and materials used to improve the property.  The Mickens appealed that judgment, which appeal resulted in an affirmance.  In October 2003, the state trial court entered a final judgment in favor of Damron Construction and against the Mickens, jointly and severally, in the amount of $234,854.64.  Moreover, on December 3, 2004, the Second District Court of Appeal affirmed this final judgment, in Mickens v. Allen Damron Constr. Co., 890

8

So.2d 1139 (Fla. Dist. Ct. App. 2004), explaining that these damages resulted from the Mickens's refusal to permit a court-ordered inspection of the residence and their threats of bodily harm. On July 20, 2005, the Florida Supreme Court denied the Mickens's petition for review without opinion.

This consolidated trial-court order also discussed that, while this litigation between Damon Construction and the Mickens was pending, Nationsbank, now the owner of the mortgage due to its merger with Chase, filed a notice of claim under the title insurance policy underwritten by Stewart Title Guaranty. Stewart Title Guaranty then exercised its right to purchase the loan to resolve the claim and successfully litigated a foreclosure suit, based on Damon Construction's default on the loan while the Mickens still possessed the property, in Case No. 1998CA-002977. The Mickens, in turn, unsuccessfully sued Stewart Title, Canady, and Rewis, challenging their absence at the initial loan closing, in Case No. 1998CA-1152. In March 2005, the Second District Court of Appeals affirmed these consolidated orders. Moreover, on June 1, 2005, the Supreme Court of Florida dismissed the Mickens's petition for review of this affirmance.

In entering judgment in favor of Stewart Title Guaranty as to all of their claims in this consolidated order, the state trial court identified the following findings of fact that related to all of the actions: (1) the Mickens wanted Damron

9

Construction to construct a house on their lot; (2) Damron Construction built a house on this lot; (3) the Mickens had secured a mortgage for this house, but had not paid for it; (4) the Mickens had signed the quitclaim deed with the intent of having the house constructed and had delivered the deed to Damron Construction; (5) the Mickens benefitted from Damron Construction receiving the construction loan; (6) after the construction was completed, the Mickens had refused to close on the final VA mortgage, and Damon Construction filed suit for specific performance; and (7) the Mickens lived in the house without paying rent or mortgage on it for approximately six years.

Applying these factual findings, the state court also examined the relative equities among the parties and concluded that, although Stewart Title "should have been more prudent in the deed process[,] but their poor judgment should not prevent them from getting an equitable lien on the house." The court explained that, to the extent the Mickens were relying on the defendants' non-compliance with all statutory requirements: (1) these "shortcuts" were taken in an attempt to accommodate the Mickens; (2) the Mickens's conduct throughout the course of the litigation had been more egregious; and (3) the Mickens's clear intent to have a house built on their property was fulfilled. The court also concluded that the Mickens had failed to prove their claims because, although they may have suffered

10

damages as a result of a contractual dispute with Damon Construction, the defective quitclaim deed had not caused those damages.

In addition to Stewart Title Guaranty's motion to dismiss in the instant case, the Polk County Sheriff filed a motion to dismiss, arguing: (1) the Mickens had failed to state a cause of action against him for civil conspiracy, extrinsic fraud on the court, or violations of substantive and procedural due process and equal protection rights, as the second amended complaint was based on contracts to which the Sheriff was not a party; and (2) the claim of civil conspiracy was due to be dismissed because the Mickens had failed to support it with any descriptions of overt acts. The Polk County Property Appraiser also filed a motion to dismiss, arguing that (1) she had been identified improperly as a "third party beneficiary," (2) the Mickens had failed to state claim against her.

The district court dismissed the Mickens's complaint as to all of the Polk County Defendants, explaining that, although it was liberally construing the Mickens's pro se complaint, the Mickens still were bound by the Federal Rules of Civil Procedure, including Rule 14(a), and, thus, could not sue the defendants as "third party defendants." After the Mickens filed a motion for leave to file a third amended complaint, the court also denied this motion without prejudice and ordered the Mickens, instead, to respond to the remaining motions to dismiss.

The Mickens then filed a response, arguing that the Rooker-Feldman doctrine was inapplicable to their second amended complaint because the prior state judgments on which the non-governmental defendants were relying were obtained through "extrinsic fraud." Citing to the Ninth Circuit's decision in Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140-41 (9th Cir. 2004), the Mickens contended that the Rooker-Feldman doctrine is not applicable when, such as here, the injury asserted is illegal acts or omissions by adverse parties. The Mickens also explained that this "extrinsic fraud" primarily consisted of the defendants "conspiring to maliciously prosecute two frivolous foreclosure lawsuits without legal or equitable standing, without indispensable parties[,] and by obstructing [the Mickens] of rights or defenses of res judicata, issue preclusion, stare decisis and the law of the case."

Additionally, the Mickens filed a second injunctive motion, seeking to enjoin the Polk County Sheriff from evicting them from the property in question and from giving possession to Stewart Title Guaranty, pursuant to a writ of possession. Similar to their response to the motion to dismiss, the Mickens asserted that this injunctive relief was merited because the defendants had committed "extrinsic fraud" on the state courts. The Mickens also contended that

12

they would be "irreparably harmed" if they and their possessions were removed, and that they had no adequate remedy at law.

The district court again denied the Mickens's motion for injunctive relief, explaining that they had failed to show a "substantial likelihood of success on the merits" because, despite the allegation that "extrinsic fraud" had resulted in the entry of multiple state-court judgments, they had not established that the Rooker-Feldman doctrine was inapplicable. The court also determined that the Mickens had failed to show that irreparable harm had been, or would be, committed by the Sheriff by removing the Mickens and their possessions from the property because the Mickens had been forewarned of the Sheriff's intended acts, and they could attempt to seek relief if any injuries occurred in the process of the eviction.

The district court also granted the remaining defendants' motions to dismiss. After summarizing the contents of the three prior state lawsuits and the second amended complaint in the instant action, the court explained that it lacked jurisdiction under the Rooker-Feldman doctrine because: (1) the federal claims were "inextricably intertwined with" the state-court judgments and would succeed only to the extent that the state court wrongly had decided the issues, and (2) at least two of the three state-court actions, which had been consolidated but had

13

traveled in separate files, had resulted in judgments rendered against the Mickens prior to the Mickens's filing of the instant action.

The district court specifically discussed that (1) the Second District Court of Appeals reversed the initial judgment in favor of the Mickens because it was unsupported by the record, (2) two of the state courts had found that neither Damron Construction nor the Damrons individually had committed fraud, (3) another state court had found that there was no evidence that either Stewart Title or Damron Construction had acted fraudulently, and (4) all of the Mickens's claims involving discrimination, § 1983, and violations of Florida statutes could have been raised in Florida courts. The court also acknowledged that the appeal of one of the prior state actions had not been resolved completely before the Mickens filed the instant action, that is, a money judgment against the Mickens for not complying with a court-ordered inspection of the property at issue in Case No. 1997-CA-455. Nevertheless, the court concluded that the final mortgage-foreclosure judgment in Case No. 1998-CA-2977, had involved "inextricably intertwined" claims, such that the same facts and issues relevant to the instant act had been resolved before this action was filed. The Mickens challenge on appeal the district court's (1) dismissal of their second amended complaint, and (2) denial of their motion for injunctive relief.

14

**Issue 1:** **Whether the district court erred in dismissing the Mickens's second amended complaint with prejudice against the non-governmental defendants**

Again citing to the Ninth Circuit's decision in <u>Kougasian</u>, the Mickens argue on appeal that the district court erred when it determined that it lacked subject matter jurisdiction based on the <u>Rooker-Feldman</u> doctrine because the Mickens had alleged that the prior state-court judgments had resulted from the defendants' "extrinsic fraud." The Mickens further contend that the <u>Rooker-Feldman</u> doctrine was inapplicable because one of the prior state actions was still pending when the Mickens filed the instant federal action. The Mickens assert that they presented in the instant action independent claims for relief, as well as asserting claims against "third party defendants," whose joinder previously was prevented by the original defendants' fraud. Finally, the Mickens generally argue that their new claims were not "inextricably intertwined" with the prior decisions because, in advancing their federal claims, the Mickens did not assert any legal errors by the state courts.

We review <u>de novo</u> a district court's order of dismissal, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." <u>Mesa Valderrama v. United States</u>, 417 F.3d 1189, 1194 (11th Cir. 2005). We also review <u>de novo</u> rulings on a federal court's subject matter jurisdiction. <u>Goodman</u>, 259 F.3d at 1331. A federal court is obligated to dismiss a

15

case if the court, after considering both the pleadings and evidence outside of the pleadings, determines that it lacks subject matter jurisdiction. Id. at 1331 n.6.

In addition to discussing that federal courts, other than the Supreme Court, have no authority to review the final judgment of state courts,[8] we explained in Goodman as follows:

> The [Rooker-Feldman] doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment. A federal claim is "inextricably intertwined" with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. However, even if a claim is 'inextricably intertwined' with the state court judgment, the doctrine does not apply if the plaintiff had no reasonable opportunity to raise his federal claim in state proceedings.

Id. at 1332 (citation and quotation omitted). Thus, for the Rooker-Feldman doctrine to bar a district court's jurisdiction, the following four criteria must be met:

> (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceedings; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

---

[8] An exception to the Rooker-Feldman doctrine exists when a federal statute authorizes federal appellate review of final state court decisions. See Dale v. Moore, 121 F.3d 624, 627 (11th Cir. 1997). The Mickens, however, have not identified such a statute.

Amos v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003) (internal citations omitted).

Here, neither party is contesting that the Mickens and the non-governmental defendants are the same parties as in the state-court proceedings. Instead, the Mickens are contending that the state-court judgments were not "rendered before the district court proceedings commenced," and, thus, concurrent state and federal jurisdiction existed. Indeed, the Supreme Court has discussed that where there is "parallel state and federal jurisdiction, Rooker-Feldman is not triggered simply by the entry of judgment in state court." Exxon Mobil Corp. v. Saudi Indus. Corp., 544 U.S. 280, ___, 125 S.Ct. 1517, 1526, 161 L.Ed.2d 454 (2005). Thus, the Supreme Court held in Exxon that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at ___, 125 S.Ct. at 1521-22.

The record, however, does not support the Mickens's argument that the state-court judgments were not "rendered before the district court proceedings commenced." The state court consolidated the three state actions in question and entered judgments in them prior to the Mickens filing their original complaint in

17

the instant action on June 5, 2005. Moreover, the Florida Supreme Court dismissed the Mickens's petitions for review of the Second District Court of Appeals' affirmances of these judgments in at least two of the three state cases, including Stewart Title Guaranty's foreclosure action. Although the Florida Supreme Court's denial on July 20, 2005, of the Mickens's petition for review of the Second District Court of Appeals' affirmance in their suit against Damron Construction, in Case. No. 1997CA-000455, occurred after the instant federal action was commenced, the federal action was subsequent to the Mickens's filing their original complaint in the state action, and neither party has contested that these state actions were consolidated. Moreover, a judgment for the Mickens in the instant action would have required a finding that the state court determination was wrong and, thus, involved claims that were "inextricably intertwined."

To the extent the Mickens also are arguing that the Rooker-Feldman doctrine was inapplicable because they were alleging that the defendants committed "extrinsic fraud" on the state court, instead of asserting claims that were "inextricably intertwined" with the claims they raised, or could have raised, in state court, they failed to identify acts constituting "extrinsic fraud." In Kougasian, the non-binding Ninth Circuit decision on which the Mickens rely, the plaintiff sought to set aside a state-court judgment by alleging that the defendant submitted a false

18

affidavit to the state court and did not supply to the plaintiff contact information for the declarant, thereby preventing the plaintiff from deposing or otherwise challenging the allegedly false affidavit. See Kougasian, 359 F.3d at 1140. Based on these acts by the defendants, the Ninth Circuit reversed the district court's dismissal under the Rooker-Feldman doctrine, and remanded the case for the district court to determine what, if any, preclusive effect the state-court judgments had on the plaintiff's federal suit. See id. at 1141-44.

On the other hand, in the instant case, the only "fraudulent acts" the Mickens attributed to the defendants were their filing of state actions. However, as discussed above, instead of being "fraudulent," or even frivolous, these actions resulted in judgments in favor of the defendants. Moreover, all of the claims that the Mickens identified in the second amended complaint either flowed directly from the three prior state lawsuits, or should have been raised in that forum. See Goodman, 259 F.3d at 1332. The Mickens's claims also were "inextricably intertwined" with the state court's judgments because the Mickens, by raising constitutional and tort challenges relating to their eviction from the property, in essence, were attempting to reverse the state court's orders relating to ownership of the property in question. See id.; see also Powell v. Powell, 80 F.3d 464, 467 (11th Cir. 1996) (holding that the Rooker-Feldman doctrine barred an "as applied"

19

challenge to a state court decision to distribute a portion of the plaintiff's husband's naval retirement pay to her upon their divorce). Thus, the district court properly concluded that the instant action, at least by the non-governmental defendants who were parties to the prior state lawsuits, was barred by the <u>Rooker-Feldman</u> doctrine.

**Issue 2:** **Whether the district court erred in denying the Mickens's motion for a preliminary injunction**

For the same reasons discussed in Issue I, the Mickens argue that the district court erred when it denied their motion for a preliminary injunction based on its determination that they had failed to show a "substantial likelihood of success on the merits." The Mickens also contend that the court erred in concluding that they failed to show that they had suffered irreparable injuries because their "homestead real property have been stolen with the aid of law enforcement officers," and they have been deprived of free speech, falsely imprisoned, retaliated against, and denied due process and equal protections of the law.

"A district court may issue a preliminary injunction when the moving party demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be

20

adverse to the public interest." BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC, 425 F.3d 964, 968 (11th Cir. 2005).  A preliminary injunction, however, "is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites."  Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003) (quotation omitted).  Moreover, we review a district court's order granting or denying a preliminary injunction only for abuse of discretion.  Id. at 1209.

In the instant appeal, however, we need not determine whether the district court  abused its discretion in denying the Mickens's motion for a preliminary injunction because, as discussed above, the district court lacked subject matter jurisdiction under the Rooker-Feldman doctrine.  See Doe v. Federal Aviation Administration, 432 F.3d 1259, 1264 (11th Cir. 2005) (concluding that we need not address the claim that the district court erred by misapplying the legal standards for the issuance of a preliminary injunction because the district court lacked subject matter jurisdiction).  Indeed, we have explained that the Rooker-Feldman doctrine can bar injunctive relief as well as other forms of relief.  Blue Cross and Blue Shield of Maryland, Inc. v. Weiner, 868 F.2d 1550, 1556 (11th Cir. 1989).  Thus, in Blue Cross, we affirmed the district court's denial of a preliminary

21

injunction when the requested relief would have required the district court to decide a federal issue that was "inextricably intertwined" with a Florida trial court's judgment. See id. Because the district court similarly lacked subject matter jurisdiction over the claims in the Mickens's second complaint, we conclude that the district court also lacked jurisdiction to grant injunctive relief.

**Issue 3:** **Whether the district court abused its discretion in dismissing the Mickens's claims against the Polk County Defendants**

The Mickens argue that the district court abused its discretion when it granted the Polk County Defendants' motion to dismiss based on the Mickens's mis-identification of these defendants as "third party defendants," instead of affording the Mickens another opportunity to amend their complaint to correct this "technical error." The Mickens also contend that, given this opportunity, they could have raised viable claims against government officials for unlawful actions under "Color of Law" and in violation of the Due Process and Equal Protection Clause of the Fourteenth Amendment.

As discussed above, we review de novo a district court's order of dismissal. See Mesa Valderrama, 417 F.3d at 1194. Under Fed.R.Civ.P. 14, a "third party defendant" may be brought into a lawsuit by a defending party acting as a "third party plaintiff." Fed.R.Civ.P. 14(a). To the extent the Mickens were proceeding without counsel, "[p]ro se pleadings are held to a less stringent standard than

22

pleadings drafted by attorneys and will, therefore, be liberally construed." See

Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, a

defendant's pro se status in civil litigation generally will not excuse mistakes he

makes regarding procedural rules. See McNeil v. United States, 508 U.S. 106,

113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993) (explaining that we "never [had]

suggested that procedural rules in ordinary civil litigation shall be interpreted so as

to excuse mistakes by those who proceed without counsel"). Because the Mickens

procedurally could not seek damages against the Polk County Defendants as "third

party defendants," the district court did not err dismissing their claims against these

defendants.

Furthermore, to the extent the Mickens are contending that the district court

abused its discretion in not allowing them to again amend their second amended

complaint to correct this error before entering its dismissal order, we review the

district court's decision to deny the Mickens's motion to amend for an abuse of

discretion. See Hall v. United Ins. Co. of America, 367 F.3d 1255, 1262 (11th Cir.

2004). "Ordinarily, if the underlying facts or circumstances relied upon by a

plaintiff may be a proper subject of relief, leave to amend should be freely given."[9]

---

[9] The Federal Rules of Civil Procedure specifically provide that leave to amend a complaint after a responsive pleading is served "shall be freely given when justice so requires." See Fed.R.Civ.P. 15(a).

Id. (quotations and marks omitted). A district court, however, may properly deny leave to amend a complaint under Rule 15(a) when such amendment would be futile. Id. at 1262-63.

A district court's "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." Id. at 1263. A complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6) when, among other things, the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) (citation and quotation omitted).[10] Moreover, a district court "need not . . . allow an amendment . . . where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed. . . .." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).

Here, in granting the Mickens leave to file their second amended complaint, the court instructed that "this is the last opportunity [the Mickens] will be afforded to amend their complaint." Additionally, the court granted the Mickens an extension of time to file a second amended complaint, based on the Mickens's assertion that they were consulting an attorney to assist them in repleading their

---

[10] In determining whether a Rule 12(b)(6) dismissal is warranted, "[a]ll well-pleaded facts in [a] plaintiff's complaint and all reasonable inferences drawn from those facts are taken as true." See McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004) (quotation omitted)

24

complaint. However, despite this notice, the Mickens, in filing their second amended complaint, again filed a "shotgun pleading," whereby they failed to state a cause of action. See Freidlander v. Nims, 755 F.2d 810, 811-12 (11th Cir. 1985) (concluding that dismissal with prejudice was appropriate where the district court gave "specific and repeated warnings" that amendment was necessary).

Examining the Mickens's specific claims in their second amended complaint, § 1985 "provides a vehicle to redress conspiracies to interfere with civil rights." Farese v. Scherer, 342 F.3d 1223, 1230 (11th Cir. 2003). The elements of a cause of action under § 1985(3)—the subsection at issue in this case—are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001) (quotation omitted).

The core of a conspiracy claim is an agreement between the parties; thus, where the plaintiff fails to allege an agreement, the pleading is deficient and subject to dismissal. Bailey v. Board of County Com'rs of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). Furthermore, where a plaintiff merely

alleges "conclusory, vague, and general allegations of conspiracy," dismissal of the conspiracy claim may be proper. Kearson v. Southern Bell Telephone & Telephone Co., 763 F.2d 405, 407 (11th Cir. 1985). Because the Mickens merely alleged in their second amended complaint that the defendants generally covered and concealed other defendants' "crimes and torts," they failed to allege with specificity an agreement between the defendants to deprive the Mickens of their rights, and their § 1985(3) claim was due to be dismissed, see Bailey, 956 F.2d at 1122; Kearson, 763 F.2d at 407.

The Mickens's claim that they suffered damages "as a consequence of all Defendants and Third-Party Defendants' extrinsic fraud on the court," also failed as a matter of law. Under Florida Law, the Mickens had to plead each essential element of fraud with particularity, including alleging that (1) the defendant made a false statement regarding a material fact, (2) the defendant knew the statement was false when he made the statement, (3) the defendant intended for the plaintiff to rely on and act upon the false statement, and (4) the plaintiff justifiably relied upon the false statement to his detriment. See Simon v. Celebration Co., 883 So.2d 826, 832 (Fla. Dist. Ct. App. 2004). Federal pleading statements, although generally liberal, also require litigants to allege fraud "with particularity." See Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) (discussing

26

Fed.R.Civ.P. 9(b)), petition for cert. filed, (April 6, 2006) (No. 05-1288).  Here, the Mickens failed to allege what "extrinsic fraud" the Polk County Defendants committed, much less discussing the circumstances "with particularity."

Similarly, the Mickens failed to state a claim alleging a violation of their substantive or procedural due process rights.  The Due Process Clause of the Fourteenth Amendment provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."  Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006) (quotation omitted).  Thus, a claim alleging the denial of procedural due process, under 42 U.S.C. § 1983, requires proof of three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  Id. (quotation omitted).

Here, assuming the Mickens properly alleged "state action" and "the deprivation of a constitutionally-protected liberty or property interest" by contending that the "third party defendants" conspired with each other to "fraudulently convey [the Mickens's] real property," see Grayden v. Rhodes, 345 F.3d 1225, 1332 (11th Cir. 2003) (concluding that the plaintiffs enjoyed a

27

constitutionally-protected property interest in continued residency at their apartments and were deprived of that interest upon eviction), they failed to allege either a "constitutionally-inadequate process," or that the Polk County Defendants failed to provide adequate procedures. Indeed, we have explained that the state must have the opportunity to "remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts," before being subject to a claim alleging a procedural due process violation. See Horton v. Board of County Com'rs of Flagler County, 202 F.3d 1297, 1300 (11th Cir. 2000). Thus, the Mickens failed to allege sufficiently a claim of a violation of procedural due process.

Additionally, "[t]he substantive component of the Due Process Clause protects [only] those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" Behrens v. Regier, 422 F.3d 1255, 1264 (11th Cir. 2005) (quoting McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc)). We further have explained that "[f]undamental rights are those rights created by the Constitution." Greenbriar Village, L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003). Additionally, in cases involving non-custodial relationships, such as here, a government actor's conduct that would amount to an intentional tort under state law only qualifies as a substantive due

28

process violation if it is arbitrary or "shocks the conscience." See Tinker v. Beasley, 429 F.3d 1324, 1328-29 (11th Cir. 2005) (concluding that police officers' falsely informing a suspect about the status of her legal representation before questioning her about a murder did not "shock the conscience" so as to violate the suspect's substantive due process rights). The Mickens merely alleged in their second amended complaint that the Polk County Defendants "covered and concealed the crimes and torts" of the other defendants and "fail[ed] to protect, consider, follow, enforce, or apply the laws." Because the Mickens failed to allege the deprivation of a fundamental right, much less conduct that was arbitrary or "shocks the conscience," their substantive due process claim also failed on its face. See Behrens, 422 F.3d at 1264; see also Tinker, 429 F.3d at 1328-29.

To the extent the Mickens were attempting to allege a violation of their equal protection rights, § 1 of the Fourteenth Amendment further provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. To state a § 1983 equal-protection claim, the Mickens had to (1) allege that, "through state action, similarly situated persons have been treated disparately," and (2) "put forth evidence that [the defendants'] actions were motivated" by an unlawful factor. See Draper v. Reynolds, 369 F.3d 1270, 1278 n.14 (11th Cir.) (quotations omitted), cert. denied, 543 U.S. 988

29

(2004). Here, the Mickens only asserted that the "third party defendants" "violated [the Mickens's] right[s] to equal protection by violating their rights to due process, redress, free speech, life, liberty, and property." Because they failed to allege that any of the "third party defendants" either treated the Mickens differently from a similarly situated person, or were motivated by a specific discriminatory intent, the Mickens failed to allege sufficiently a violation of their equal protection rights.

Finally, to the extent the Mickens attempted to generally allege Title VII discrimination by stating that the "third party defendants" conspired with each other and the other defendants to "systematically deprive [the Mickens] of Due Process, Equal Protection . . . Redress for conspiracy, forgery . . . based on race," they failed to identify which part of Title VII on which they were relying. Moreover, they failed to explain what facts supported such a claim. Thus, this claim also was due to be dismissed. See Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1271 (11th Cir. 2004) (explaining that "[p]leadings must be something more than an ingenious academic exercise in the conceivable," and "unsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under [Rule 12(b)]") (quotations omitted).

Accordingly, we conclude that the district court lacked jurisdiction to grant the Mickens either damages or injunctive relief and, thus, did err in dismissing

30

their complaint with prejudice based on the <u>Rooker-Feldman</u> doctrine, or in denying their motion for a preliminary injunction. Furthermore, because the Mickens could not sue the Polk County Defendants as "third party defendants," and because they, otherwise, failed to state a cause of action against these defendants, the district court did not commit reversible error in dismissing the Mickens's claims against these defendants, instead of granting the Mickens's motion for leave to amend their second amended complaint. We, therefore, affirm.

 **AFFIRMED.**