FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN BENAVIDEZ; HEATHER BENAVIDEZ; J.C.B., a minor; A.J.B., a minor by and through their Guardian Ad Litem Diana Benavidez, *Plaintiffs-Appellants*, | No. 19-55274 D.C. No. 3:18-cv-00558-CAB-AGS |
| v. | OPINION |
| COUNTY OF SAN DIEGO; JENNIFER LISK; BENITA JEMISON, *Defendants-Appellees*, and | |
| SAN DIEGO HEATH AND HUMAN SERVICES AGENCY; POLINKSY CHILDREN'S CENTER; DOES, 1 through 50 inclusive, *Defendants.* | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted July 7, 2020
Pasadena, California

Filed April 12, 2021

Before:  Marsha S. Berzon and Daniel P. Collins, Circuit
         Judges, and Gary S. Katzmann,* Judge.

Opinion by Judge Katzmann;
Concurrence by Judge Collins

## SUMMARY**

### Civil Rights

The panel affirmed in part and reversed in part the district court's dismissal of an action brought pursuant to 42 U.S.C. § 1983 asserting that County social workers used judicial deception and violated plaintiffs' constitutional rights in securing a juvenile court order resulting in the medical examinations of plaintiffs' minor children while the children were in protective custody, without notice to the parents or their consent.

The panel first held that the district court correctly ruled that the *Rooker-Feldman* doctrine did not bar the exercise of subject matter jurisdiction over this case. The panel held that plaintiffs' claims were not a de facto appeal from the juvenile court orders. Instead, plaintiffs alleged that the misrepresentations and inaction by social workers and other

---

* The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

County employees resulted in violations of their constitutional rights.

The panel held that the amended complaint sufficiently alleged facts in support of a reasonable inference that County social workers committed judicial deception that allowed them to be held liable for the resulting unconsented-to medical examinations. The amended complaint alleged that social workers knowingly and falsely represented to the juvenile court that they had made reasonable efforts to notify the parents about the medical examinations. The parents did not learn of the examinations, however, until after their children were released from custody. The allegations supported a plausible inference that the social workers submitted their report and request for court authorization with at least a reckless disregard for the truth and the alleged misrepresentations were material to the granting of the juvenile court's orders.

The claims were also sufficient under Fed. R. Civ. P. 9(b) because they alleged with particularity a claim involving fraud. Finally, by asserting that the parents did not have knowledge of the medical examinations until after they took place, the amended complaint also sufficiently alleged Fourth and Fourteenth Amendment violations arising from the examinations.

The panel held that the social workers were not entitled to qualified immunity for the alleged unconstitutional judicial deception and unconstitutional medical examinations. The panel held that this court's precedent established the right to be free from judicial deception in child custody proceedings. Thus, a reasonable social worker would understand that providing false information concerning notification to parents when requesting a

juvenile court order for a medical examination on minors in protective custody would violate or at least disregard a substantial risk of a violation of the parents' rights. The panel therefore reversed the district court's dismissal of the claims against the social workers on qualified immunity grounds and remanded for proceedings consistent with the panel's opinion.

The panel held that none of the allegations regarding the County's alleged unconstitutional policy, practice, custom, or failure to train its employees provided factual support for *Monell* liability. The panel noted that plaintiffs failed to provide anything more than the 2015 County policy pertaining to parental consent, which was allegedly violated, and the facts of a single incident of an unconstitutional medical examination and judicial deception. These allegations were insufficient to establish a *Monell* claim. Therefore, the panel affirmed the district court's dismissal of plaintiffs' claims against the County.

Concurring in the judgment, Judge Collins stated that this was a relatively straightforward case that did not warrant the extended discussion and broader statements contained in the majority opinion. Judge Collins wrote that the complaint's allegations were sufficient to state a plausible claim of knowing and intentional judicial deception that escaped qualified immunity. He also agreed that plaintiffs' *Monell* claim was properly dismissed with prejudice, because the operative complaint did not allege sufficient facts to support such a claim.

## COUNSEL

Donnie R. Cox (argued), Law Office of Donnie R. Cox, Oceanside, California; Paul W. Leehey, Law Office of Paul W. Leehey, Fallbrook, California; for Plaintiffs-Appellants.

Jeffrey P. Michalowski (argued) and Christina Snider, Senior Deputies; Thomas E. Montgomery, County Counsel; Office of County Counsel, San Diego, California; for Defendants-Appellees.

## OPINION

KATZMANN, Judge:

This appeal turns on the sufficiency of allegations in an amended complaint asserting judicial deception and violation of other constitutional rights in securing a court order resulting in medical examinations of minors without notice to or consent of the parents. The Benavidezes, John and Heather Benavidez ("Parents") and their children J.C.B. and A.J.B. ("Minors"), assert claims against the County of San Diego, the San Diego County Health and Human Services Agency ("HHSA"), the Polinsky Children's Center ("PCC") (collectively, "the County") and the County's social workers, Jennifer Lisk and Benita Jemison ("Lisk and Jemison"), based on medical examinations of Minors during their time in protective custody. The Benavidezes seek to hold Lisk and Jemison liable under 42 U.S.C. § 1983 for unconstitutional judicial deception in seeking a state juvenile court order to authorize unconstitutional medical examinations of the Minors without notice to or consent of the Parents. They further seek to hold the County liable for the unconstitutional medical examinations. The district

court dismissed with prejudice the claim against Lisk and Jemison based on qualified immunity and the claim against the County based on a failure to allege *Monell* liability. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL HISTORY

The Second Amended Complaint ("SAC") alleges as follows: Acting on behalf of the County, HHSA social workers Lisk and Jemison obtained a protective custody warrant and, with police assistance, removed the Minors from their home to PCC. Three days later, on March 21, 2016, a California juvenile court held a detention hearing to review the removal of the Minors and issued an "Order Authorizing Medical Examination and Treatment" for each of the Minors (collectively, "Orders"). The Parents were present at the detention hearing. However, neither Lisk, Jemison, nor any County employee discussed the medical examinations with the Benavidezes before or after the hearing. Furthermore, there was no discussion of medical examinations at the hearing.

Prior to this hearing, the County submitted a Detention Report to the court. The Report notably did not contain any discussion of efforts made to obtain the Parents' consent to medical examinations of the Minors. The SAC alleges that neither Lisk nor Jemison nor any County employee sought the Parents' consent or advised them of their right to be present at the medical examinations of the Minors at any point between the date of the Minors' removal and the date of the hearing and subsequent issuance of the Orders. These alleged events contravene a policy enacted by the County in 2015 ("2015 Policy"), which required County employees to obtain parental consent and to advise parents of their right to be present at medical examinations at PCC.

As a result of the Orders, the Minors were subjected to medical examinations at PCC on March 22, 2016, one day after the hearing and four days after the Minors were removed from their home.  The medical examinations included "a full body inspection including the children's genital and/or anal areas, obtaining urine to test, and drawing blood and/or vaccinations."  The Parents were not informed of these medical examinations until after they happened, did not consent to these medical examinations, and were not present or given the opportunity to be present at these medical examinations.  The Parents "did not become aware that the examinations had occurred until after the Minor Plaintiffs were released from PCC."  The Benavidezes then appealed the juvenile court decisions involving removal of the Minors from their home in California state court but did not there challenge the medical examinations or related Orders.

The Benavidezes filed this action in the U.S. District Court for the Southern District of California on March 16, 2018.  The Benavidezes amended their complaint on July 5, 2018, after the County filed a motion to dismiss.  The district court dismissed their first amended complaint, concluding that it was a prohibited de facto appeal of the state court decision under the *Rooker-Feldman* doctrine, failed to allege constitutional violations, and failed to allege claims against the County.  The district court dismissed the complaint with leave to amend.  On November 9, 2018, the Benavidezes filed the SAC.  On February 12, 2019, the district court again dismissed their complaint, this time with prejudice.  The district court concluded that: (1) the *Rooker-Feldman* doctrine did not bar exercise of jurisdiction; (2) the Benavidezes alleged constitutional violations in the medical examinations; (3) the Benavidezes failed to allege a claim against Lisk and Jemison because the government

employees were entitled to qualified immunity; (4) the Benavidezes failed to allege a claim against the County because they did not allege "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"; and (5) further amendments would be futile, so the case was dismissed with prejudice. The Benavidezes timely appealed.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3). The Benavidezes timely filed notice of appeal on March 8, 2019. This court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

## STANDARDS OF REVIEW

We review de novo a district court's jurisdictional determination under the *Rooker-Feldman* doctrine, *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1025 (9th Cir. 2005); a district court's dismissal for failure to state a claim, *Palm v. L.A. Dep't of Water & Power*, 889 F.3d 1081, 1085 (9th Cir. 2018); a district court's decision on qualified immunity, *Thompson v. Mahre*, 110 F.3d 716, 721 (9th Cir. 1997); and a district court's decision on municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *see, e.g.*, *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). We review for abuse of discretion a district court's dismissal with prejudice and without leave to amend. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1079 (9th Cir. 2012).

## DISCUSSION

The Benavidezes' appeal involves two primary issues: first, whether there is federal subject matter jurisdiction

where the County contends that the *Rooker-Feldman* doctrine bars this claim as a de facto appeal of a state court decision, second, whether the Benavidezes sufficiently pleaded section 1983 liability against Lisk and Jemison in light of qualified immunity and limited liability against municipalities under *Monell*.  As to these issues, we hold that the *Rooker-Feldman* doctrine permits federal subject matter jurisdiction over this claim, that the Benavidezes adequately pleaded Lisk and Jemison's section 1983 liability, and that the district court did not abuse its discretion by dismissing with prejudice the Benavidezes' claims against the County.

## I.  The *Rooker-Feldman* Doctrine Does Not Bar Subject Matter Jurisdiction.

As a threshold matter, we conclude that the district court correctly ruled that the *Rooker-Feldman* doctrine does not bar the exercise of subject matter jurisdiction over this case. The district court held that the claims alleged were based on the asserted legal wrongs committed by Lisk and Jemison and the County's corresponding policy and custom and were not challenging the Orders issued by the juvenile court.  The County argues, as it did below, that the Benavidezes' claims constitute a prohibited de facto appeal of the juvenile court's decision, and thus the court does not have jurisdiction under the *Rooker-Feldman* doctrine.  We disagree.

The *Rooker-Feldman* doctrine derives its name from two Supreme Court cases: *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  "Under *Rooker-Feldman*, a federal district court is without subject matter jurisdiction to hear an appeal from the judgment of a state court."  *Bianchi v. Rylaarsdam*, 334 F.3d 895, 896 (9th Cir. 2003).  The *Rooker-Feldman* doctrine bars lower federal courts from exercising jurisdiction "to review the final determinations of

a state court in judicial proceedings." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) (citing *Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995), *overruled on other grounds by Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 710 (9th Cir. 2017)) (other citations omitted). "*Rooker-Feldman* is a statute-based doctrine, based on the structure and negative inferences of the relevant statutes rather than on any direct command of those statutes." *Noel v. Hall*, 341 F.3d 1148, 1154–55 (9th Cir. 2003) (citation omitted). Plaintiffs thus cannot come to federal court to seek "what in substance would be appellate review of the state judgment." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994) (citations omitted).

*Noel* provided the following "general formulation" of the *Rooker-Feldman* doctrine: "If a . . . plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court . . . , *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If . . . [a] plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." 341 F.3d at 1164.

Our case law makes clear that "this doctrine applies even where the challenge to the state court decision involves federal constitutional issues," including section 1983 claims. *Napolitano*, 252 F.3d at 1029 (citing *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986))*; see Branson*, 62 F.3d at 291 (citations omitted). Furthermore, the doctrine applies to both final and interlocutory decisions from a state court. *See Napolitano*, 252 F.3d at 1030. The doctrine does not depend on the availability of a forum; instead, it exists to protect state courts from collateral attack by a federal judgment. *Id.* In *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004), however, we explained that

where a party alleges extrinsic fraud by an adverse party in procuring a state court judgment, the *Rooker-Feldman* doctrine does not apply, because such a claim does not challenge the state court decision directly, *id.* at 1140–41.

The Benavidezes' claims are not a de facto appeal from the juvenile court Orders. Instead, they allege that the misrepresentations by Lisk and Jemison and further inaction by those social workers and other County employees resulted in violations of their constitutional rights. As discussed in more detail below, the Benavidezes' claims are based on section 1983, which provides a statutory cause of action where state officials acting under color of law violate constitutional rights. 42 U.S.C. § 1983. Despite the judicial context and intermediate step of the juvenile court Orders, the Benavidezes' claims do not seek relief from or reversal of the juvenile court's Orders. Therefore, the *Rooker-Feldman* doctrine does not serve as a jurisdictional bar to their claims here.

The County fails to acknowledge that the Benavidezes claim injury based on the alleged misrepresentation by Lisk and Jemison that caused the juvenile court to issue the Orders which authorized the medical examinations. In fact, the Benavidezes challenge a legal wrong by Lisk and Jemison preceding the issuance of the Orders, and the County's custom or failure to train to prevent against unconstitutional medical examinations. As the district court noted, the "alleged legal wrongs by Lisk and Jemison cannot avoid scrutiny because they were successful in deceiving the juvenile court." Thus, the County is incorrect that the *Rooker-Feldman* doctrine bars federal subject matter jurisdiction.

This case is divergent from past cases in which the *Rooker-Feldman* doctrine was held applicable. In *Branson*

*v. Nott*, we determined that the *Rooker-Feldman* doctrine barred a claim where the "complaint explicitly [sought] reversal of the [California] appellate court's decision." 62 F.3d at 292. Similarly, in *Napolitano*, we explained that the *Rooker-Feldman* doctrine barred jurisdiction where "the state court had considered and rejected [plaintiff]'s constitutional arguments" and "the district court could not have found in favor of [plaintiff] on the constitutional claims without holding that the state court had erred." 252 F.3d at 1029–30. By contrast, the Benavidezes, for the first time, challenge Lisk and Jemison's alleged misrepresentation *to* the state court, and the County's alleged corresponding liability for those wrongs. *Cf. Johnson*, 512 U.S. at 1006 ("The United States merely seeks to litigate its § 2 case for the first time, and the Government's claims, like those of the private plaintiffs, are properly before the federal courts.").

Even if the Benavidezes had directly challenged the juvenile court decision, which they did not, the extrinsic fraud corollary to the *Rooker-Feldman* doctrine would apply. *See Kougasian*, 359 F.3d at 1141 (explaining that extrinsic fraud is "not an error by [a] court," but instead is "a wrongful act committed by the party or parties who engaged in the fraud"). The Benavidezes allege they did not become aware of the medical examinations until after they took place. This time sequence, they allege, precluded an opportunity to be heard on the juvenile court's Orders before the medical examinations. And, they contend, the time sequence also robbed them of their right to be present at those medical examinations. As a result of the time sequence, the Benavidezes had no opportunity to challenge the Orders in state court, because they had no notice of the examinations and because the examinations took place one day after the juvenile court issued the Orders. Raising the misrepresentation issue to the juvenile court or appealing the

Orders after the medical examinations had taken place would have been pointless, because there was no undoing the negative impact on the family of medical examinations that had already taken place.  Under the circumstances, the extrinsic fraud corollary to the *Rooker-Feldman* doctrine applies.  *See id.* at 1140–41.

In sum, the district court correctly determined that the *Rooker-Feldman* doctrine does not bar federal subject matter jurisdiction over the Benavidezes' claims.

## II. The Benavidezes Sufficiently Pleaded Section 1983 Liability Against Lisk and Jemison, but Not Against the County.

The Benavidezes brought suit pursuant to section 1983, which, in relevant part, creates a cause of action for "the deprivation of any right[], privilege[], or immunit[y] secured by the Constitution" by individuals acting "under color of" law.  42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  In the SAC, the Benavidezes alleged violations of their Fourth and Fourteenth Amendment rights in relation to the medical examinations, caused by Lisk and Jemison's judicial deception of the juvenile court in procuring the Orders for the medical examinations.  The Benavidezes claimed that both constitutional violations were the result of actions by the County, its sub-divisions, and its employees, specifically Lisk and Jemison.  The parties do not dispute the second prong of the Benavidezes' section 1983 claim—that the

violation was allegedly committed by Lisk, Jemison, and other County employees acting under color of law.

The district court dismissed the Benavidezes' section 1983 claims in the SAC with prejudice. In assessing dismissal of claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (discussing pleading requirements for claims regarding fraud under Rule 9(b), for which dismissals are "functionally equivalent" to Rule 12(b)(6)). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

The County seems to argue that the Benavidezes' section 1983 claim regarding Lisk and Jemison's alleged judicial

deception must meet the heightened standard of Rule 9(b), which governs pleading claims involving fraud. Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Particularity includes "'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement, and why it is false[.] Knowledge, however, may be pled generally." *United Healthcare Ins.*, 848 F.3d at 1180 (citations omitted) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). This heightened standard serves the dual purpose of (1) giving defendants notice of the alleged misconduct so that they may defend themselves and (2) deterring plaintiffs from using complaints as a "pretext for the discovery of unknown wrongs" while protecting defendants and the courts from the costs associated with these complaints. *Id*. (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)). However, "this standard 'does not require absolute particularity or a recital of the evidence.'" *Id.* (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298 (3d ed. 2016)). Further, "a complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

## A. Threshold Constitutional Violations

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The SAC alleged that the County conducted the medical examinations without notice to, consent from, or the opportunity to be present for the Parents, and that Lisk and

Jemison caused these circumstances through judicial deception.  The district court relied on our previous decisions to hold that the Benavidezes sufficiently alleged conducting the medical examinations on the Minors at PCC without parental notice or consent violated their constitutional rights. Specifically, Plaintiffs' claims sufficiently alleged a violation of their constitutional right to family association, which "includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." The district court did not independently address the Benavidezes' claims in the context of a constitutional violation through judicial deception, nor did it address whether these claims satisfied the heightened pleading standard under Rule 9(b).

### i. *Due Process Violation in Connection with Judicial Deception*

The Benavidezes argue that the SAC alleges that Lisk and Jemison procured the juvenile court Orders through judicial deception in violation of their due process rights. The SAC alleges that: (1) Lisk and Jemison requested that the juvenile court issue the Orders, (2) the Orders were based on the representation by Lisk and Jemison that "reasonable efforts" had been made to notify the Minors' parents about the medical examinations, (3) that representation was false, and (4) Lisk and Jemison knew that it was false because they had made no effort to notify the Parents.  Furthermore, the SAC alleges that there were no hearings other than the Detention Hearing at which the Parents were present and where the Parents could have been notified of the examinations.  Thus, the Benavidezes argue, the SAC sufficiently alleged facts in support of a reasonable inference that Lisk and Jemison committed judicial deception that

allows them to be held liable for the resulting unconsented-to medical examinations.  We agree.

We have previously recognized a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free from judicial deception and fabrication of evidence in the context of civil child custody cases.  *See Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101,1108 (9th Cir. 2010) ("[D]eliberately fabricating evidence in civil child abuse proceedings violates the Due Process clause of the Fourteenth Amendment when a liberty or property interest is at stake . . . ."); *Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000) (stating "parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention" and "children have a corresponding right to the love, comfort, and reassurance of their parents while they are undergoing medical procedures").

"To support a § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding . . . ."  *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004).  A plaintiff who provides direct evidence of false statements can allege deliberate fabrication of evidence in violation of constitutional due process guarantees.  *See Costanich*, 627 F.3d at 1108.  "Reporting that a witness said something he or she did not cannot reasonably be characterized as a recording error or a misstatement," but is instead fabricated evidence.  *Reynolds v. County of San Diego*, 224 F. Supp. 3d 1034, 1055 (S.D. Cal. 2016) *rev'd in part on other grounds sub nom. Reynolds v. Bryson*, 716 F. App'x 668 (9th Cir. 2018) (citation omitted).  Furthermore, in the search warrant context, we have previously held that an omission of a fact necessary to

establish probable cause presented a triable issue of material facts about whether that omission "amounted to at least reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1088 (9th Cir. 2011).

Examples of judicial deception in child protective custody cases are illuminating. In *Reynolds*, a district court held that omission of two words from medical notes was "[a]t worst . . . a reporting error or misstatement" and not sufficient evidence of deliberately or recklessly false statements or material. 224 F. Supp. 3d at 1056 (citation omitted). By contrast, in *Costanich*, we held that allegations that a social worker falsely claimed to have interviewed several witnesses in connection with a child protective custody case presented a triable issue of material fact that there was deliberate fabrication of evidence. 627 F.3d at 1112–14. In *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), *vacated in part*, 563 U.S. 692 (2011), 661 F.3d 1201 (9th Cir. 2011), we held that "proof, in the form of [an] affidavit and deposition testimony, that [defendant] included false statements in his affidavit requesting a protective custody order," *id.* at 1035, was sufficient to present a genuine issue of material fact of judicial deception to which qualified immunity did not apply and summary judgment was inappropriate, *see id.* at 1035–36. The Benavidezes had to allege judicial deception sufficient to meet the constitutional standard, if not the heightened pleading standard of Rule 9(b), to overcome the County's motion to dismiss under Rule 12(b)(6). The SAC alleges the following facts regarding judicial deception:

> 30. Prior to the Detention Hearing, Defendants LISK, JEMISON and DOES 1 through 50 submitted a Detention Report to the court. . . . [In their report], LISK,

JEMISON and DOES 1 through 50, included no such discussion of the Consent forms or of the Minor Plaintiffs being submitted to medical procedures, including examinations, or of the parents being informed they could be present . . . .

32. Both HEATHER and JOHN attended the Detention Hearing on March 21, 2016. At no time before, during, or after the hearing, or prior to the children's medical procedures, including examinations, did Defendants LISK, JEMISON and/or DOES 1 to 50 speak with or notify the PARENTS of the physical examinations at PCC, or attempt to gain their consent for those examinations, or inform them that they could be present during any such examination . . .

34. During the March 21, 2016 Detention Hearing (the only court hearing in this matter prior to the children's examinations), there was no request by the COUNTY that the judge make any order regarding physical examinations to be conducted of the Minor Plaintiffs.

35. Instead, at some time before or after the March 21, 2016 Detention Hearing, Defendants LISK, JEMISON and/or DOES 1 through 50 submitted a request that the Court sign an "Order Authorizing Medical Examination and Treatment" (hereinafter "ORDER") of the minor Plaintiffs.

The SAC also includes the text of the Orders, which states that the juvenile court found that there had been an effort by the County to notify the Parents, or the Parents objected to medical examinations, and/or the County made "reasonable efforts to schedule the examination of the child for a time when the parent or guardian is available to attend, but such efforts have been unsuccessful." Finally, the SAC alleges that the Parents did not learn of the medical examinations until after the Minors were released from protective custody. These statements allege a violation of constitutional prohibition on judicial deception and meet the heightened pleading standard of Rule 9(b).

### 1. Judicial Deception Under the Constitution

To successfully allege a violation of the constitutional right to be free from judicial deception, the Benavidezes must make out a claim that includes (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision. *See Greene*, 588 F.3d at 1035.

First, the Benavidezes allege a misrepresentation by referring to the Detention Order and request for authorization for medical examinations submitted by the County through Lisk and Jemison. The SAC alleges that these documents omitted the County's failure to attempt to notify the Parents, despite the Parents being present and in contact with the County, and the subsequent Orders making findings of notice.

Second, taking the complaint as true and construing its allegations in the light most favorable to the Benavidezes, those allegations support a plausible inference that Lisk and Jemison submitted the Detention Report and request for

court authorization for medical examinations and did so with at least reckless disregard for the truth.  The Benavidezes alleged that the Parents received no notice of the medical examinations, that Lisk and Jemison submitted the Detention Report, and that Lisk and Jemison requested authorization for the medical examinations without confirming that the Parents had been contacted, or that contact had been attempted, regarding the medical examinations.  Thus, a plausible inference of a reckless disregard for the truth can be made. *See Costanich*, 627 F.3d at 1111 (explaining that both "an interviewer who deliberately mischaracterizes witness statements" and "an investigator who purposefully reports that she has interviewed witnesses, when she has actually only attempted to make contact with them, deliberately fabricates evidence").  The alleged misrepresentations by Lisk and Jemison are akin to falsely attributing statements to an interviewee or falsely reporting that interviews took place when they had not, situations we have previously recognized as rising to the level of a deliberate misrepresentation. *See id.*

Finally, the alleged misrepresentation was material to granting of the juvenile court's Orders.  *See Greene*, 588 F.3d at 1035 ("The alleged misrepresentation was 'material' to the granting of the removal order if the Juvenile Court would have declined to issue the order had [the defendant] been truthful.") (citation omitted).  The SAC creates a plausible inference that the juvenile court could not have made findings related to parental consent and notice of the medical examinations without the misrepresentations of Lisk and Jemison.  According to the SAC, the juvenile court did not discuss the medical examinations at the hearing with the Parents present, and there is no other probable source for the information on which the court based its findings.  The

SAC, therefore, alleges a constitutional violation by making out a claim based on violations of the Benavidezes' right to be free from judicial deception.

## 2. Judicial Deception under Rule 9(b)

The claims are also sufficient under Rule 9(b) because they allege with particularity a claim involving fraud. The SAC contained particular allegations in stating the who, what, when, and where of the judicial deception. *See United Healthcare Ins.*, 848 F.3d at 1180. First, the SAC identifies Lisk and Jemison as the social workers who presented the Detention Report to the juvenile court.[1] Second, the SAC alleges specific omissions regarding failure to notify the Parents of the medical examinations to the juvenile court. It does so by pointing to the 2015 Policy detailing the requirements of notice or court authorization, the deficient

---

[1] The SAC states, "Prior to the Detention Hearing, Defendants LISK, JEMISON and DOES 1 through 50 submitted a Detention Report to the court." The County argues that including "Does 1 through 50" indicates that the complaint does not allege with particularity specific to each defendant the fraudulent statements or omissions. However, the 2015 Policy indicates that the Detention Report would have most likely been submitted by the social workers involved in removing the children. This, therefore, creates an inference that Lisk, having removed the Minors from their parents' custody in consultation with and under the supervision of Jemison, would have been responsible for submitting the deficient Detention Report. There being no other, more plausible explanation behind the alleged events, viewing the complaint in the light most favorable to the Benavidezes dictates the conclusion that the Benavidezes alleged that Lisk and Jemison made misrepresentations or omissions to the juvenile court. In any event, Plaintiffs represented that they could, if allowed, address this issue through further amendment to the complaint by clarifying that Lisk and Jemison were most likely the parties to have made the misrepresentations. Providing an opportunity for Plaintiffs to amend their complaint accordingly would provide useful clarification on remand.

Detention Report and request for authorization, and the findings of the Orders based on those submissions to the juvenile court.  The SAC makes clear that the juvenile court did not discuss the medical examinations with the Parents, and the 2015 Policy indicates that the Detention Report would have likely come from Lisk and Jemison.  Therefore, only Lisk and Jemison could have made statements to the court regarding notice to the Parents for the juvenile court to make this finding.  In all, viewing the complaint in the light most favorable to the Benavidezes, the juvenile court would not have made its findings without the misrepresentations of Lisk and Jemison regarding notice.

Additionally, the Order, as described by the Benavidezes, "is a form . . . clearly developed by the County . . . to be handed to judicial officers for signature," plausibly by the involved social workers.  The SAC further alleges that the court received this information sometime between March 18, 2016, when the County removed the Minors from their home, and the issuance of the Orders on March 21, 2018.  This window is sufficiently specific to plead fraud with particularity.  *See United Healthcare Ins.*, 848 F.3d at 1180 ("[A] complaint need not allege 'a precise time frame.'" (quoting *Cooper*, 137 F.3d at 627)).  These details put the County and Lisk and Jemison on notice of the timing, subject of, and parties to the alleged misrepresentation that is sufficient for them to prepare a defense.  The SAC therefore alleges, with the requisite particularity under Rule 9(b), Lisk and Jemison's judicial deception.

### ii. *Fourth and Fourteenth Amendment Violations in Connection with the PCC Medical Examinations*

The Benavidezes also allege that their constitutional rights were violated when the Minors were medically

examined at PCC without the Parents' notice, consent, or an opportunity to be present.  The district court agreed, noting that "a court order is not an alternative to parental notice. Nor does the existence of a court order automatically entitle the County to conduct the examinations outside of the presence of the parents."

We first addressed a family's Fourth and Fourteenth Amendment rights in the context of medical examinations of children while in protective custody in *Wallis*, 202 F.3d 1126.  In *Wallis*, we explained that "[p]arents and children have a well-elaborated constitutional right to live together without governmental interference" that "includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state."  202 F.3d at 1136, 1141 (citations omitted).  Thus, *Wallis* recognized the right of parents to notice and consent or judicial authorization in advance of medical examinations of their children, unless a "reasonable concern that material physical evidence might dissipate" or an "urgent medical problem" exists.  *Id.* at 1141 (citations omitted).  We explained that the Constitution also provides the right of parents and children to have a parent present at children's medical examinations.  *Id.* at 1142 (stating "parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention" and "children have a corresponding right to the love, comfort, and reassurance of their parents while they are undergoing medical procedures").

We again addressed the constitutional right of parents to be present at their children's medical examinations in *Greene*, 588 F.3d 1011.  Relying on *Wallis*, we reiterated the right of parents and children "to be with each other during

potentially traumatic medical examinations" absent limited, valid circumstances.  *Id.* at 1036.  We noted that the "children's right to their mother's comfort and their mother's right to provide such comfort were . . . at their apex" where the medical examination included inspection of and photographing of the child's genitals.  *Id.* at 1037.

We most recently addressed these constitutional rights in *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018). *Mann* involved medical examinations of children at PCC, the same facility and type of examinations at issue here, without notice to the children's parents.  *See id.* at 1158.  We concluded that, "under *Wallis*, the County is required to notify the parents and obtain parental consent (or a court order) in advance of performing the Polinsky medical examinations, and permit parents to be present for these examinations."  *Id.* at 1162.  Where the County fails to notify "parents about the examinations and [performs the examinations] without obtaining either the parents' consent or judicial authorization," the County violates the constitutional rights of children and parents.  *Id.* at 1161 (citing *Wallis*, 202 F.3d at 1141).  First, the County "violates parents' Fourteenth Amendment substantive due process rights."  *Id.* at 1160–61.  Second, the County violates the children's Fourth Amendment "right to 'be secure in their persons . . . against unreasonable searches and seizures.'" *Id.* at 1164 (ellipsis in original) (quoting U.S. Const. amend. IV).

The Benavidezes pleaded unconstitutional medical examinations on the Minors in violation of the rights of both the Minors and the Parents.  Our most recent case on point, *Mann*, makes clear that the County is required to: (1) notify the parents of a medical examination of their children; (2) obtain parental consent or a court order in advance of the

medical examination; and (3) permit the parent to be present at the examination. *Id.* at 1162. While the juvenile court did issue the Orders authorizing the medical examinations, the Benavidezes alleged sufficient facts that the medical examinations took place without their notice, consent, or presence. At a minimum, these allegations are sufficient to make out a violation of *Mann*'s requirement that parents have an opportunity to be present, and, taking the allegations as true and in the light most favorable to the Benavidezes, they suffice to plead a constitutional violation as to the medical examinations themselves. The district court correctly rejected the County's argument that the Orders were all that was necessary to make the medical examinations constitutional. Because the Benavidezes pleaded that they did not have knowledge of the medical examinations until after they took place, the Benavidezes sufficiently alleged that the medical examinations on the Minors at PCC violated their constitutional rights. *See Mann*, 907 F.3d at 1160–61, 1164.

Thus, the SAC sufficiently alleged constitutional violations by Lisk and Jemison, in the form of judicial deception, and by the County and its employees, in the form of unconstitutional medical examinations.

### b. Lisk and Jemison's Liability Under Section 1983 in Light of Qualified Immunity

The next inquiry is whether Lisk and Jemison can be held liable under section 1983 for the alleged judicial deception and unconstitutional medical examinations or whether qualified immunity protects them from liability. The Benavidezes argue that, because Lisk and Jemison's alleged judicial deception caused the subsequent unconstitutional medical examinations, qualified immunity cannot shield them from liability. The district court held that Lisk and

Jemison were entitled to qualified immunity for the alleged unconstitutional medical examinations and thus could not be held liable under section 1983.  The district court noted that, while "*Wallis* and *Mann*, and the other cases discuss[] parents' right to advance notice when the County intends to conduct a medical examination of their children," those cases "say nothing about a constitutional right to notice from particular individuals or notice in a particular form."  The district court stated that "the Parents only had a constitutional right to be notified of the medical examinations, not a constitutional right to be notified by Lisk and Jemison."  Therefore, the district court concluded that, because no precedent clearly prohibited "presenting a proposed order granting the County the right to conduct medical examinations of the Minor Plaintiffs without having provided notice to the Parents themselves, or having a good faith basis to believe that the Parents had been notified by someone else," Lisk and Jemison were not on notice that their conduct would make them liable for a violation of Plaintiffs' constitutional rights.  Furthermore, the district court concluded that the Benavidezes' claims regarding Lisk and Jemison's alleged misrepresentation to the juvenile court were conclusory and so not sufficient to state a claim.  Thus, the district court held, Lisk and Jemison were entitled to qualified immunity with respect to the unconstitutional medical examinations.

We reverse that holding and the dismissal of the claims against Lisk and Jemison.  Because the district court examined whether there was a clearly established constitutional right at the time of Lisk and Jemison's actions through the lens of unconstitutional medical examinations on children in protective custody, it incorrectly concluded that Lisk and Jemison are entitled to qualified immunity.

Lisk and Jemison are not entitled to qualified immunity for unconstitutional judicial deception.

"Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The purpose of qualified immunity is to "give[] government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hardwick v. County of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (alteration omitted) (quoting *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015)). For a court to determine that a state actor is not entitled to qualified immunity under section 1983, there must be a constitutional violation on the facts alleged, and the constitutional right violated must be "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "clearly established" requirement guards state actors from liability where "the law did not put the officer on notice that his conduct would be clearly unlawful." *Id.* at 202. Having established above that the SAC meets the first prong of this inquiry, we turn to the second: whether the constitutional rights at issue were "clearly established" so as to put Lisk and Jemison on notice that their conduct would violate the Constitution.

Plaintiffs bear the burden of proving that a constitutional right "was clearly established at the time of the incident." *Greene*, 588 F.3d at 1031 (citation omitted). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A constitutional right is clearly established where a Supreme Court case or a case within the relevant circuit prohibits the particular conduct at issue. *Boyd v. Benton County,* 374 F.3d 773, 781 (9th Cir. 2004). "[W]hile closely analogous prior case law involving an identical fact context is not required for qualified immunity to be withheld, the unlawfulness of the action in question must be apparent in light of some pre-existing law." *Devereaux v. Perez*, 218 F.3d 1045, 1053 (9th Cir. 2000) (citing *Mendoza v. Block*, 27 F.3d 1357, 1361–62 (9th Cir. 1994)).

Our precedent establishes the right to be free from judicial deception in child custody proceedings. *See, e.g.*, *Costanich*, 627 F.3d at 1111–12 ("We have previously held that when genuine issues of material fact arise regarding fabrication of evidence in a child abuse investigative report, a police officer is not entitled to qualified immunity because '[c]redibility is an issue for the trier of fact.'") (alteration in original) (quoting *McSherry v. City of Long Beach*, 560 F.3d 1125, 1130 (9th Cir. 2009), *withdrawn and superseded by* 584 F.3d 1129). Most analogous to the Benavidezes' claims is *Greene*, in which we concluded that a defendant social worker was not entitled to qualified immunity "as to the false representation claim, as the [plaintiffs'] right to be free from judicial deception in securing the removal order was clearly established at the time of [defendant's] alleged misrepresentations to the court." 588 F.3d at 1034. Prior cases establishing this right in the context of protective custody were decided well before the date of the alleged conduct in March 2016. Therefore, Lisk and Jemison had fair warning that material omissions and misrepresentations

with a deliberate disregard for the truth to a juvenile court would violate the Constitution.

It was reasonably foreseeable that unconstitutional misrepresentations to the juvenile court would result in medical examinations on the Minors without their parents' knowledge or consent. Thus, a reasonable social worker would understand that providing false information concerning notification to parents when requesting a juvenile court order for a medical examination on minors in protective custody would violate or at least disregard a substantial risk of a violation of the Parents' rights. *Cf. Hope*, 536 U.S. at 739. Lisk's and Jemison's misrepresentations to the juvenile court set in motion a path by which the Minors would be subjected to unconstitutional medical examinations. This scenario is comparable to an individual who provides false information to obtain a search warrant. *Cf. Mann*, 907 F.3d at 1164 (citing U.S. Const. amend. IV). Regardless of whether they were responsible for issuing or executing a warrant that resulted in an unconstitutional search, their judicial deception alone is sufficient to overcome their qualified immunity. *See Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995) ("[I]f an officer 'submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth[,] . . . he cannot be said to have acted in an objectively reasonable manner,' and the shield of qualified immunity is lost." (quoting *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), *overruled on other grounds in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002))); *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) ("A seizure conducted pursuant to a warrant obtained by judicial deception violates the Fourth Amendment." (citation omitted)). Thus, Lisk and Jemison, through their alleged judicial deception, can be

held liable for the unconstitutional medical examinations. We reverse the dismissal by the district court as to the claims against Lisk and Jemison and hold that Lisk and Jemison are not entitled to qualified immunity.

### c. The County's Liability Under Section 1983 in Light of *Monell*

The second claim of the SAC alleges that the County is liable for its employees' conducting unconstitutional medical examinations. The district court held that the County could not be held liable under section 1983 for the alleged constitutional violations because the Benavidezes "failed to allege a direct causal link between a County policy, custom, or practice and the alleged constitutional violations." We agree and affirm dismissal of the claims against the County.

The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom. 436 U.S. at 694. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. The custom or policy must be a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Castro*, 833 F.3d at 1075 (ellipsis in original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)).

The Supreme Court has made clear that policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain

obvious constitutional violations, *see City of Canton v. Harris*, 489 U.S. 378, 387 (1989), and, in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality, *see Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405–06.

The Benavidezes variously characterize their theory of *Monell* liability as a policy, practice, or custom, inadequate training or failure to train, and a single incident that indicates a failure to adequately train.

With respect to the custom or policy rubric, after a district court held that the County's policy on medical examinations conducted at PCC on children in protective custody was unconstitutional, the County implemented its 2015 Policy. *See Mann*, 907 F.3d at 1159 (discussing *Swartwood v. County of San Diego*, 84 F. Supp. 3d 1093 (S.D. Cal. 2014)). The district court concluded that "[t]he SAC does not allege, and Plaintiffs do not argue, that this 2015 Policy caused the alleged violations of Plaintiffs' constitutional rights. Instead, Plaintiffs essentially assume that because the 2015 Policy allegedly was not followed here, it also must not be followed in other situations."

Failure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees. *City of Canton*, 489 U.S. at 388–89. Mere negligence will not suffice to show *Monell* liability. *Dougherty*, 654 F.3d at 900 (citation omitted). To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained

their employees.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).

As to the single instance category, generally, a single instance of unlawful conduct is insufficient to state a claim for municipal liability under section 1983.  *See, e.g.*, *Fed'n of Afr. Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996).  Single acts may trigger municipal liability where "fault and causation" were clearly traceable to a municipality's legislative body or some other authorized decisionmaker, *Brown*, 520 U.S. at 406.  Where, for example, a "city has armed its officers with firearms[,] . . . the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as deliberate indifference to constitutional rights."  *City of Canton*, 489 U.S. at 390 n.10.

Each of the Benavidezes' three *Monell* theories fails. First, the Benavidezes did not sufficiently allege that the County's written 2015 Policy caused the constitutional violations.  The 2015 Policy was adopted as part of the settlement agreement that resolved the *Swartwood* dispute, *Mann*, 907 F.3d at 1159, and requires municipal actors "to obtain parental consent and provide advance notice to the parents so that they can be present at the examination," *id.* at 1166.  Thus, our previous cases holding that the County's former policy was unconstitutional do not speak to the County's policy as of March 2016.  Because the Benavidezes allege that Lisk and Jemison *violated* the 2015 Policy, the

SAC does not support *Monell* liability on the basis of that policy.

Second, the Benavidezes argue that the previous cases finding the County's policy unconstitutional also evince a custom deliberately indifferent to the rights of parents and children that continues to this day, despite the adoption of the 2015 Policy.  However, one instance of County employees violating the constitutional rights of parents and children is insufficient to demonstrate a custom supporting *Monell* liability.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).  The implementation of the 2015 Policy, which included the Detention Report form and the juvenile court order form, indicates a changed policy or custom since the court's previous decisions.  Absent a pattern of conduct, alleging that the forms used are worded in a way that allows County employees to circumvent the County's written policies in violation of the Constitution is insufficient evidence of a County custom.  *Cf. Castro*, 833 F.3d at 1075 n.10 (explaining that a plaintiff may prevail on a *Monell* claim by "show[ing] a custom or practice of violating a written policy").

Third, the Benavidezes characterize their *Monell* claim as a failure to train, but again support this claim only with a single incident.  As with single violations of a written policy, "[T]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."  *City of Canton*, 489 U.S. at 390–91 (citations omitted); *see also Blankenhorn*, 485 F.3d at 485 ("Because Blankenhorn has limited his proof to the City's failure to train only Nguyen, he did not meet his burden to withstand Defendants' motion for summary judgment.").

The Benavidezes also argue that the single incident exception previously identified by the Supreme Court should directly apply here. Where, as here, the County employees are not making life-threatening decisions, *see Connick*, 563 U.S. at 64, and because micromanaging of municipal policies should be avoided, the single incident exception is inapplicable.

Ultimately, none of the allegations regarding the County's alleged unconstitutional policy, practice, custom, or failure to train its employees provides factual support for *Monell* liability. Therefore, the court affirms the district court's dismissal of the Benavidezes' claims against the County.

The Benavidezes also appeal the district court's dismissal with prejudice. The district court clearly acted within its discretion in dismissing the Benavidezes' claims against the County without leave to amend. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) ("If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper." (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986))). Despite three attempts to allege facts to support *Monell* liability, Plaintiffs failed to provide anything more than the 2015 Policy itself and the facts of a single incidence of an unconstitutional medical examination and judicial deception. As discussed above, these allegations were insufficient to establish a *Monell* claim. The Plaintiffs apparently did not attempt to remedy this deficiency after the district court first identified it in relation to the first amended complaint. We affirm the district court's dismissal of the complaint against the County with prejudice.

**CONCLUSION**

For the reasons stated, we (1) **AFFIRM** the district court's determination that the *Rooker-Feldman* doctrine is inapplicable; (2) **REVERSE** the district court's dismissal of the claims against Lisk and Jemison; and (3) **AFFIRM** the dismissal with prejudice of the claims against the County. Accordingly, the case is **REMANDED** to the district court and shall proceed consistent with this opinion.

---

COLLINS, Circuit Judge, concurring in the judgment:

This is a relatively straightforward case that did not warrant the extended discussion and broader statements contained in the majority opinion. I therefore concur only in the judgment.

**I**

Plaintiffs John and Heather Benavidez and their minor children, J.C.B. and A.J.B., brought this § 1983 action alleging that two county social workers, Jennifer Lisk and Benita Jemison, engaged in "judicial deception" by "misrepresenting and concealing facts" in their request for a state juvenile court order that would allow them to conduct intrusive examinations of the children without their parents' knowledge, consent, or participation.[1]   Based on these

---

[1] The operative complaint states, somewhat equivocally, that the judicial deception was committed by Lisk, Jemison, "and/or" unnamed Doe defendants.   But the district court effectively ignored these placeholder Doe allegations by construing the complaint as alleging that "Lisk and Jemison" were the ones who "presented the Orders to the juvenile court for signature outside of the presence of the Parents and

allegations, Plaintiffs asserted a single § 1983 claim against Lisk and Jemison, and they also asserted, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a single § 1983 claim against the County of San Diego (including its relevant agencies). After Defendants moved to dismiss, the district court concluded that the operative complaint did not sufficiently allege that Lisk and Jemison engaged in judicial deception and that, in the absence of such allegations, they were entitled to qualified immunity. The court also dismissed the *Monell* claim, concluding that the complaint failed sufficiently to allege that any constitutional violation was caused by an official policy of the County. Plaintiffs timely appealed.

## II

As an initial matter, Defendants contend that the district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine, which "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004); *see also Lance v. Dennis*, 546 U.S. 459, 463 (2006). The district

---

without personally notifying the Parents that they were doing so or confirming that such notice had been given" and who "made affirmative misrepresentations to the juvenile court." At oral argument in this court, Plaintiffs confirmed that, if given leave to amend, they would affirmatively allege that Lisk and Jemison were the only two social workers assigned to the case and therefore were the only parties who could have been responsible for making the false statements. Accordingly, for purposes of evaluating the adequacy of Plaintiffs' allegations, I construe them as alleging that the judicial deception was committed only by Lisk and Jemison and not by some unnamed Doe defendant.

court correctly rejected this argument as contrary to controlling Ninth Circuit precedent.

We have held that, where a party commits "extrinsic fraud" on a state court by submitting a false declaration *and* preventing the other side from presenting any response, the *Rooker-Feldman* doctrine will not preclude a federal court from hearing certain claims based on injuries arising from the state court order that resulted from this extrinsic fraud. *See Kougasian*, 359 F.3d at 1140; *cf. Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859–60 (9th Cir. 2008) (*Rooker-Feldman* does apply, despite alleged fraud by the opposing party, when the federal plaintiffs' objections to the fraudulently obtained judgment had been presented and rejected in state court); *Kougasian*, 359 F.3d at 1140 n.1 (fraud claims that are not based on extrinsic fraud do not fall within this particular exception to *Rooker-Feldman*).  Here, Plaintiffs allege that Lisk and Jemison knowingly submitted false information to the state court in order to obtain an order authorizing examination of the Benavidez children; that they did so without affording Plaintiffs any opportunity to respond or be heard and without informing the state court that this was the case; and that the examinations were completed the next day before the Benavidez parents knew that they had been requested or had taken place.  Moreover, the single § 1983 cause of action alleged against Lisk and Jemison, as well as the single derivative *Monell* claim asserted against the County, both rest dispositively on the premise that Lisk and Jemison committed a due process violation by engaging in this extrinsic fraud.  By thus asserting extrinsic-fraud-based claims predicated on the allegation that Lisk and Jemison used extrinsic fraud to procure a state court order in a manner that effectively deprived Plaintiffs of any opportunity to contest it prior to its execution, Plaintiffs have pleaded sufficient allegations

to invoke the exception to *Rooker-Feldman* that we recognized in *Kougasian*.

## III

The district court, however, erred in concluding that Plaintiffs did not plead sufficient facts to support a claim for judicial deception and that Lisk and Jemison were therefore entitled to qualified immunity.

## A

"To state a claim for relief in an action brought under § 1983, [Plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Here, the loadbearing allegation in the sole § 1983 cause of action against Lisk and Jemison is that, acting under color of state law, they engaged in "judicial deception" by affirmatively "misrepresent[ing] and/or conceal[ing]" crucial facts when they requested the order authorizing intrusive examinations of the Benavidez children and that they "knew" that the facts presented "were not true."

Where, as in this case, the individual defendants have asserted qualified immunity, the § 1983 claim against them will fail unless their actions violated a "clearly established right"—*i.e.*, a right whose contours were "'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he [or she] was violating it.'" *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (citation omitted). At least where, as here, a claim of judicial deception resting upon *affirmative fraud* is asserted, the merits of the underlying constitutional claim largely collapse

into the qualified immunity inquiry: *every* reasonable official would understand that committing *affirmative fraud* on a court in order to obtain authorization for intrusive examinations is unconstitutional.[2]  *See*, *e.g.*, *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) ("It is clearly established that judicial deception may not be employed to obtain a search warrant."); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108 (9th Cir. 2010) ("deliberately fabricating evidence in civil child abuse proceedings violates the Due Process clause of the Fourteenth Amendment when a liberty or property interest is at stake"); *see generally Sandoval v. County of San Diego*, 985 F.3d 657, 687–88 (9th Cir. 2021) (Collins, J., concurring in judgment in part & dissenting in part) (noting that, where the requisite scienter is high enough, the merits of the scienter issue and the qualified immunity inquiry may overlap).  Indeed, at oral argument, Defendants' counsel conceded that, at the time Lisk and Jemison acted, it was clearly established that making a knowingly false statement to obtain a court order for an intrusive examination was a violation of constitutional rights.

As a result, Plaintiffs' operative complaint states a § 1983 claim against Lisk and Jemison, and defeats their assertion of qualified immunity, if it pleads sufficient facts with particularity to raise a plausible inference that Lisk and Jemison affirmatively misstated or concealed crucial facts

---

[2] The same might not be true in a case involving a claim that an official committed judicial deception by making inaccurate statements with "reckless[]" disregard for their truth.  *KRL*, 384 F.3d at 1117.  It is perhaps possible that an official could *recklessly* make an inaccurate statement in a manner that not *every* reasonable official in that person's shoes would recognize violates the plaintiff's constitutional rights.  Because this issue need not be addressed in order to resolve this appeal, I express no further view on it.

from the state court when they requested the examination order. Reviewing the district court's assessment of the complaint's allegations de novo, *Patterson v. Van Arsdel*, 883 F.3d 826, 829 (9th Cir. 2018), I conclude that Plaintiffs' allegations were sufficient under this standard.

## B

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under the assumption that the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to claims of judicial deception, the complaint's allegations must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (simplified). In other words, to satisfy Rule 9(b), a plaintiff must allege "'the who, what, when, where, and how' of the misconduct charged." *Id.* (citation omitted). At the motion to dismiss stage, we accept as true all well-pleaded factual allegations set forth in the complaint and construe them in the light most favorable to the plaintiffs. *Patterson*, 883 F.3d at 829. So construed, Plaintiffs' operative complaint alleges the following facts.

The Benavidez children were removed from their parents' home on March 18, 2016. A detention hearing to review the removal was held three days later, which the parents attended. In connection with that hearing, Lisk and

Jemison submitted a detention report to the court, and that report made no mention of whether they had contacted the parents about potential medical examinations, had requested consent from the parents, or had told the parents that they could be present during any examinations. Throughout that three-day period, the Benavidez parents were available to speak with Lisk and Jemison about such subjects, but Lisk and Jemison never discussed those matters with them before, during, or after the hearing. At the detention hearing, the County did not request any order from the court regarding physical examinations of the Benavidez children.

Nonetheless, at some point before or shortly after the March 21, 2016 detention hearing, Lisk and Jemison submitted a request that the state court sign two pre-printed court forms entitled "Order Authorizing Medical Examination and Treatment," one for each of the Benavidez children. As reflected on the face of the orders, which Defendants submitted in the district court in support of their motion to dismiss, the state court judge signed the orders on March 21. The form orders contain a recital specifying the finding that the court must make before it may issue such an order. Accordingly, by issuing the orders, the state court necessarily found that one or more of the following three statements were true:

> (1) the County of San Diego Health and Human Services Agency ("Agency") has made reasonable efforts to locate or contact a parent and/or guardian of the above-named child to notify them of the Agency's request for a medical examination and treatment of their child who is in the care of the Agency, but such efforts have been unsuccessful; or (2) upon request of the Agency, the child's

parent or guardian has objected to the medical examination and treatment of the child; and/or (3) the Agency has made reasonable efforts to schedule the examination of the child for a time when the parent or guardian is available to attend, but such efforts have been unsuccessful . . . .

The complaint alleges that the court's findings in the orders were based on representations made by Lisk and Jemison to the court, and that, at the time they made such representations, Lisk and Jemison knew that all three statements contained in the recital were false. Specifically, they knew that no effort had been made to locate and contact the Benavidez parents about medical examinations; that the parents were never told about the County's request and were not given an opportunity to object to any examinations; and that the parents were never told that an examination was being requested or scheduled, nor were they told when or where the children were scheduled for physical examinations. Medical procedures and examinations were conducted on the Benavidez children the very next day, and the parents did not learn about those examinations until well after they had occurred.

These factual allegations are more than sufficient to state a claim for judicial deception under *Iqbal* and Rule 9(b). The complaint alleges ample facts to establish that each of the recitals in the order was false, and—given the complaint's allegation that the court's findings were based on the representations made by Lisk and Jemison—the complaint sufficiently alleges that these two defendants made the false representations on which those findings were based. The district court stated that Plaintiffs had to "allege *exactly* what Lisk and Jemison each told the juvenile court," but that is

wrong.     Even under Rule 9(b)'s heightened pleading standards, Plaintiffs sufficiently alleged the "'who, what, when, where, and how'" of the misconduct.  *Vess*, 317 F.3d at 1106 (citation omitted).     Under the complaint's allegations, Lisk and Jemison were the ones who made the challenged statements in presenting the request (either both personally or Lisk acting personally with Jemison's approval); the statements consisted of representations that one or more of the recitals in the court form were true; the representations were made on or about March 21, 2016; and they were made in some form of *ex parte* communication with the court.  These specifics are more than enough to allow Lisk and Jemison to "'defend against the charge and not just deny that they have done anything wrong.'"  *Id*. (citation omitted).

Even under Rule 9(b), scienter "may be alleged generally," *see* Fed. R. Civ. P. 9(b), and the complaint's allegations are sufficient on this score as well.  The complaint alleges that Lisk and Jemison knew that those representations were false, because they were the social worker and supervisor assigned to the Benavidez case and therefore knew that no efforts had been made to contact the parents about medical examinations.     Moreover, the allegation that Lisk and Jemison obtained the order in some form of direct communication with the court, and outside the context of the detention hearing attended by the parents, further strengthens a reasonable inference that Lisk and Jemison *knew* that the parents were unaware of the medical-examination request and that Lisk and Jemison were taking steps to ensure that the parents did not learn of the request in advance.

Accordingly, the complaint's allegations are sufficient to state a plausible claim of knowing and intentional judicial

deception that escapes qualified immunity.  *See KRL*, 384 F.3d at 1117.  The district court erred in concluding otherwise.

## IV

I agree that Plaintiffs' *Monell* claim was properly dismissed with prejudice, because the operative complaint does not allege sufficient facts to support such a claim.

The complaint alleges that, in response to the decision in *Swartwood v. County of San Diego*, 84 F. Supp. 3d 1093 (S.D. Cal. 2014), the County in February 2015 adopted a formal policy that required adherence to the sort of parental notice and consent measures that Plaintiffs allege were violated here.  The complaint then goes on to say that the County has a policy or practice of causing or allowing violations of the February 2015 policy, but the district court correctly held that these allegations were utterly conclusory and inadequate under *Iqbal*.  Apart from pointing to violations that *predated* the 2015 policy, the complaint alleges only that (1) Lisk and Jemison were able to violate that 2015 policy in this case and (2) the County's "Detention Report form" lacked a design that was sufficient to ensure compliance with the 2015 policy.  These meager allegations fail to raise a plausible inference that the County has a policy or practice of affirmatively *allowing* violations of its 2015 policy.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents.").

For similar reasons, Plaintiffs' failure-to-train allegations are also inadequate.  Such a theory of *Monell* liability usually requires a "pattern of similar constitutional violations by untrained employees," *see Connick v. Thompson*, 563 U.S. 51, 62 (2011), and no such pattern has been alleged here.  *See also Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407–08 (1997) (a "one-time negligent administration" of a training program does not "tend to show . . . the lack of proper training").  Nor have Plaintiffs alleged facts to show that the "patently obvious" consequence of the County's training will be constitutional violations such as the one alleged here. *Connick*, 563 U.S. at 64.

Finally, Plaintiffs' failure-to-discipline theory of *Monell* liability fails for substantially the same reasons.  *See Rodriguez v. County of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018) (noting that such a theory requires a showing of "'widespread'" or "repeated constitutional violations" that were ignored (citation omitted)).

*      *      *

For the foregoing reasons, I concur in the judgment affirming the dismissal of the *Monell* claim with prejudice and reversing the dismissal of the § 1983 claim against Lisk and Jemison.